·OTTO S. HIRSCH, Respondent, v. UNITED STATES GRAND LODGE OF THE ORDER OF BRITH—ABRAHAM, Appellant.

56 101
80 336
56 101
184 610

St. Louis Court of Appeals, January 16, 1894.

1. Benefits in the Nature of Insurance: PLEADING. A petition in this cause, which was an action for benefits in the nature of insurance, was indefinite and uncertain, but by intendment at least showed a contract between the defendant and the plaintiff and a right of recovery thereon by the latter. *Held,* that the petition was sufficient on demurrer.

2. ———: MISREPRESENTATION IN FORMATION OF CONTRACT. When a member of a benefit society has been induced to join it in reliance upon an erroneous publication of its by-laws in relation to the benefits to be paid by it, he is not on that account entitled, on the theory of estoppel, to the payment of benefits in accordance with the by-laws as published, but is limited to his rights under the by-laws as they actually exist.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*H. A. Loevy* for appellant.

(1) The petition does not state a cause of action. (2) Appellee was conclusively presumed to know the laws of appellant, whether contained in the pamphlet or in the records. *Harvey v. Ancient Order of United Workmen,* 50 Mo. App. 477; *Tuttle v. Walton,* 1 Ga. 49; *Pfister v. Gerwig,* 122 Ind. 570; 1 Beach on Corporations, secs. 85, 321; *McLellan v. Public Schools,* 15 Mo. App. 366.

*Rassieur & Schnurmacher* for respondent.

ROMBAUER, P. J. —The plaintiff's petition states, in substance, the following facts. The defendant is a benevolent order with subordinate lodges. In March, 1892, the plaintiff became a member of one of these subordinate lodges upon the faith of a pamphlet, which the defendant had furnished to the lodge as containing all its laws. By one of these laws it was provided that, upon the death of the wife of a member in good standing, the defendant would pay to such member $500. The plaintiff's wife died in August, 1892, while he was a member in good standing. The plaintiff thereupon demanded the $500, but the defendant refused to pay it, claiming that under its laws he was not entitled to such payment unless *he* was a member for six months prior to his wife's death. The plaintiff states that the pamphlet furnished to him by the defendant contained no such law or limitation, and prays judgment.

To this petition the defendant filed a general demurrer, which the court overruled. It thereupon filed an answer containing a general denial, and averring that in 1888, and long before the plaintiff became a member, it had adopted a law touching the payment of the $500 benefit, providing that such payment of $500 should be made to a member only upon the death of his wife, if *she* had been a member of the defendant's order for six months preceding her death. The answer further stated that the plaintiff's wife had not been a member of the defendant order for six months prior to her death, and hence he was not entitled to recover. The answer was denied by reply.

Upon the trial of the cause there was evidence tending to show the facts set out in the plaintiff's petition, as well as those set out in the defendant's special defense. The defendant admitted that the plaintiff was a member in good standing when his wife died, and also that the law touching the endowment fund was as stated in plaintiff's petition, if its amendment in 1888 was invalid. The court thereupon instructed the jury to find a verdict for the plaintiff for $500 and interest. Judgment being entered accordingly, the defendant appeals and assigns for error that the petition states no cause of action, and that the instruction of the court was erroneous under the evidence.

The petition is peculiar, and it is difficult to ascertain from its recitals on what propositions of law the plaintiff relies for recovery. Instead of stating the substantive facts that the plaintiff made a contract with the defendant authorized by its laws, and what such laws were on the controverted question, it states that the defendant induced the plaintiff to enter into a contract by representing what its laws were on the

controverted point. It states that the defendant refused to pay the claim because its laws prohibited such payment, but neither admits nor denies the existence of such prohibitory law. It is evident that the pleader did not desire on the one hand to admit the validity of the adoption of the amendment of 1888, nor did he on the other hand intend to forego the benefit of a possible estoppel, in case it should be determined that such law was validly adopted. As the petition does, however, at least by intendment, show a contract between the plaintiff and defendant, and a right of recovery thereon independent of any question of estoppel, we think a general demurrer thereto was properly overruled. To reach the defects of the petition a motion to make it more definite and certain was the proper remedy.

In the consideration of the next error complained of, a detailed statement of part of the evidence becomes essential. The court instructed the jury to find for the plaintiff, and advised them that the attempted amendment of the defendant's laws in 1888 was no defense to this action, even if such amendment was adopted in a formally legal manner. This view can be supported only on one of two theories: Either the defendant was estopped as against the plaintiff to set up the amendment, or else the amendment was invalid because an unreasonable exercise of the defendant's charter powers. The first view is clearly untenable for the following reasons: *First*, the estoppel, if there was any, depended on controverted facts and could not be declared by the court as a matter of law; *next*, there is no room for an estoppel in a case of this character. If the plaintiff made any contract with the corporation at all, he made a contract in conformity with its laws. We are aware of no principle which would permit agents of a corporation of this character to make a contract out-

side of its laws, and thereby estop the corporation from questioning the validity of the contract so made. If the plaintiff, owing to the dereliction of the corporate officers, made a contract which he did not intend to make, that may be good ground for rescinding the contract, but is no ground for enforcing it otherwise than as made. If he was induced to make such a contract by the fraud of the corporate agents (which is not charged), the corporation might become responsible to him for damages caused by the fraud of its agents, but in neither event could the contract be enforced. These propositions we consider elementary. *Harvey v. Grand Lodge*, 50 Mo. App. 476, and cases cited.

The only view open for argument, therefore, is that the attempted amendment was either outside of the charter powers of the corporation, or else, if within its charter powers, was so unreasonable as to require the court to set it aside. This is, in fact, the sole view which is pressed on our consideration by the respondent's counsel in support of the action of the court.

It is not contended that the amendment was outside of the defendant's charter powers, but it is strenuously insisted that it was inoperative, because it was unreasonable in that it prescribed an impossible condition of recovery by requiring membership on part of the wife for six months, when no provision was made for the wife's becoming a member. This argument, we conceive, is based on a misinterpretation of the evidence.

The defendant's laws provide among other things:

Article 3, section 1. "No candidate under twenty-one, or *his wife* under seventeen, shall be admitted to *membership*. Application must state name, age and maiden name of wife; no one accepted as member whose wife is domiciled out of place where subordinate lodge is located, or if she cannot obtain favorable physician's

certificate.    If wife is nonresident of United States, he can become member as unmarried, not paying endowment assessments and renouncing for himself and heirs. endowment otherwise due on death of wife."

Article 3, section 3.   "Member marrying after initiation shall cause wife to be examined by lodge physician, and, in case of *membership of wife*, section 1 of this article to govern.   Secretary of subordinate lodge shall transmit certificate with name, age and maiden name of wife to grand secretary."

Article 7, section 2.   "Member stricken from roll for nonpayment of dues and assessments, and desiring reinstatement, must furnish certificate of health *of wife and himself.*"

In fact, numerous laws of the order in force prior to 1888 distinctly recognize the wife of a member, who has passed a physician's examination, as likewise *a member of the order in one sense*, although she was not permitted actively to participate in the government of the order.   When, therefore, the defendant's secretary was asked the question: "Was she (the wife of the deceased) a member of Nathan Frank Lodge of the Order of Brith-Abraham?" he could, and did, answer with perfect propriety: "*In the manner we call members she was.*"   When the law of 1888 was adopted, precluding a member from recovering the death benefit unless his wife belonged to the order for six months preceding her death, it necessarily meant a belonging to the order, or membership therein, in the sense in which the membership of the wife was mentioned in other then existing laws of the order.   That such use of the term *member* is not strictly correct is the same argument which was attempted in *State ex rel. v. Donaldson*, 28 Mo. App. 190, to which we replied that "no philological dissertation is needed in such a case.   The intent is palpably there, and we need not trouble our-

selves about the fitness of the words used to express it,. when it is quite certain *that they express no other or different intent."* A simple examination of the business propositions involved in the defendant's scheme of beneficial insurance conclusively shows that the amendment of 1888 was merely designed to remedy an apparent defect in such scheme, which became patent to the defendant's managers, who may be presumed to possess that financial acuteness for which their race is proverbial.

There is no merit in the further complaint, that the plaintiff should have exhausted his remedies within the order before applying to the courts. It is sufficient answer, that the order provided no method of proceeding by which he could do so.

The judgment is reversed, and the cause remanded to be proceeded with in conformity with this opinion. All the judges concur.