W. H. BINDER, Administrator of the Estate of W. E. HAVER-STOCK, Deceased, v. THE NATIONAL MASONIC ACCIDENT ASSOCIATION, Appellant.

Accident Insurance: PERMANENT TOTAL DISABILITY: PREMATURE ACTION. Where an accident certificate provides for the payment of a certain sum in case of permanent total disability, a further provision that "no benefits shall be due until disability ceases or the right to benefit has terminated" has no application thereto, but refers to weekly benefits provided for in the certificate; and action to recover for the permanent disability may be commenced in accordance with the general provision regu-

lating the maturity of claims against the association and commencement of actions therefor.

**Premature action.** An action on a benefit certificate to recover a permanent total disability claim brought after submission of proofs and disavowal of liability, was not premature, although within the time limited for the association to make settlement; and especially where a supplemental petition was filed after the maturity of the claim.

**Permanent total disability:** PROOF. Where the proof of a permanent total disability claim against an accident association showed a total disability and tended to show that it was permanent, a denial by the association of all liability before the permanence of the injury could be determined, waived the necessity of further proof.

**Permanent total disability:** CONSTRUCTION OF CERTIFICATE. The provisions of the accident certificate in suit are construed and held to provide for the payment of a certain sum in case of permanent total disability, but admitting a doubt as to the proper construction it must be resolved against the association.

**Estoppel.** An accident association is estopped to deny its power to contract for the payment of a specified sum in case of permanent total disability, by incorporating in the contract an article of its charter purporting to convey such power upon which the assured relied, whether done through fraud or by mistake.

**Instruction:** ACCIDENTAL DISABILITY. Where a contract of accidental insurance provides that there shall be no recovery for a disability resulting wholly or in part, directly or indirectly, or on account of any disease or infirmity, and there was evidence tending to show that the injury might have been aggravated or caused wholly or in part by disease, a refusal to instruct that if the jury so found there could be no recovery, was error.

**Expert Evidence.** The testimony of skilled medical men as to the effect of disease is competent, and its weight is for the jury.

*Appeal from Pottawattamie District Court.*— HON. O. D. WHEELER, Judge.

WEDNESDAY, JANUARY 18, 1905.

SUIT at law to recover on an accident certificate issued to W. E. Haverstock by the defendant on the 22d day of July, 1898.   At about eleven o'clock in the night of July 27, 1901, Mr. Haverstock went into the bath-room in his residence for the purpose of taking his usual nightly bath, and about 30 minutes thereafter, he was, found in the tub in a semiconscious condition.   There were bruises on his head and body, his right leg and arm and the right side of his face and tongue were paralyzed, and he was unable to speak.   He lived until May 12, 1902, never having recovered from his paralyzed and semiconscious condition.   July 30, 1901, Horace T. Haverstock, a son of the deceased, notified the defendant of the accident to his father in the following letter:   " Mr. W. E. Haverstock, holding certificate No. 27,819, was found in an unconscious condition in the bath tub on Saturday night, July 27th.   He is still in an unconscious condition at this writing, and is unable to use his right arm or leg, and is considerably bruised all over his body.   Dr. P. J. Montgomery is the attending physician." August 7th the same son again wrote to the defendant, notifying it of the accident substantially as in the former letter. On the 14th of August the defendant answered as follows: " Horace T. Haverstock, Esq., Council Bluffs, Iowa — Dear Sir:   I am in receipt of your communication dated August 7th and note contents.   Replying, say, if your father is still unconscious, he may write us if he so desires after he becomes conscious, and we will correspond with him relative to anything pertaining to his membership with this association."   September 5th the defendant was advised that Mr. Haverstock " is still unable to speak, but has regained partial consciousness."   September 14th the defendant was again advised as to Mr. Haverstock's condition as follows: " Mr. Haverstock cannot at the present time, owing to his paralyzed condition, communicate with any one.   While the symptoms are somewhat favorable, still his condition is critical.   As soon as he may be able to make affidavit as to his

injury, will have him do so, and mail to you." The letter to the defendant of September 14th also stated that a claim for total disability was made, and affidavits as to the injury and condition of Mr. Haverstock were sent therewith. The defendant, through its secretary, answered this letter notifying Mr. Haverstock's representative that it did not intend to waive any of the provisions of the contract as to the proofs required, and saying further that it would in all respects stand upon the contract. It also contained this statement: " I also wish to say that personally I do not believe the association is liable or can become liable to Mr. W. E. Haverstock on account of his disability or the injury or affliction claimed to have been received by him July 27th." In March, 1902, suit was brought against the defendant by the guardian of Mr. Haverstock. The petition alleged total disability, and asked judgment for $5,000 on account thereof. In July, 1902, the present plaintiff was substituted, and filed an amended and supplemental petition. Issue was thereafter joined, and the case tried to a jury, the trial resulting in a verdict for the plaintiff for $5,425. From a judgment on the verdict the defendant appeals. *Reversed.*

*Montgomery & Hall* and *Harl & Tinley,* for appellant.

*Flickinger Bros.* and *Clark Varnum,* for appellee.

SHERWIN, C. J.— The by-laws of the defendant association provide that: " No benefits shall be due until ninety days after the receipt by the association of complete and satisfactory proofs. And no benefits shall be due until dis-

1. PERMANENT TOTAL DISABILITY: premature action. ability ceases, or the right to benefits has terminated. No suit shall be brought upon any claim against this association whether disputed or not before sixty days after the presentation to the association of completed satisfactory proofs." Because of these provisions the appellant contends that this suit was prematurely brought, and should have been dis-

missed, and it relies chiefly upon the provision that " no benefits shall be due until disability ceases or the right to benefits has terminated." It is said that by the terms of this provision no claim for disability can be made until the disability ceases by death, or by recovery, or by the expiration of the time during which a right to benefits has existed. Whether such is the correct construction of the provision depends largely upon the question whether the contract provides for the payment of a sum certain for " permanent total disability." If it does, as we shall hereinafter attempt to show, it is clear that the provision is not applicable to such condition, because, if the certificate holder is entitled to a stated sum for a permanent total disability, the other provisions of the contract set out above, by implication at least, authorize the bringing of an action therefor at the end of either 60 or 90 days after presentation to the association of complete and satisfactory proofs. In other words, when the liability of the association and the amount thereof is fixed and certain under its contract, the amount becomes due at the end of the stated period, and the provision relied upon by the appellant applies only to disability for which weekly benefits only can be recovered. This conclusion is made clearly apparent when we consider the entire contract. It provides for the payment of a sum certain for the loss of different members of the body, and that such loss would constitute a disability is beyond question; and still the appellant's theory, carried to its logical conclusion, would prohibit a recovery therefore until after the death of the member. That such was not the intent of the provision is very manifest.

It is also claimed that the suit was prematurely brought, because it was commenced before the expiration of the period limited within which the association was entitled to make 2. PREMATURE settlement before the bringing of suit. There ACTION. is nothing in this contention because of the appellant's disavowal of liability six months before suit was

brought and immediately after the proofs were presented to it. Moreover, the filing of the amended and supplemental petition after the death of Mr. Haverstock and after every claim that could be made against the appellant had matured, was, in effect, the commencement of a new suit, and the substantial rights of the appellant have not in any way been prejudiced by a refusal to dismiss. *Seevers v. Hamilton,* 11 Iowa, 66; *Sigler v. Gondon,* 68 Iowa, 441.

The appellant's by-laws provide that no benefits shall be paid to the member or his beneficiary unless it shall be furnished with satisfactory proof that the disability or death

**3. PERMANENT TOTAL DISABILITY: proof.** was purely accidental and the direct result of an accident, and that the accident was the sole and only cause thereof. It is claimed that the proof furnished did not show accidental "permanent total disability," and that there should have been no recovery therefor. That they showed a total disability is beyond dispute; and while they did not, and could not at that time, state whether the disability was permanent, the facts stated therein tended to show that it was, and before it was known certainly that the disability was permanent the appellant denied any liability for the injury, and hence further proof was not necessary. *Stephenson v. Bankers' Life Ass'n,* 108 Iowa, 637; *Dyer v. Des Moines Ins. Co.,* 103 Iowa, 524.

Mr. Haverstock was a member of Division B in class 1 of the defendant association. His application for member-

**4. PERMANENT TOTAL DISABILITY: construction of certificate.** ship was in writing on one of the appellant's application blanks, which, so far as material to this inquiry, was as follows:

Class 1.                          Division B.                          No. 27,819

APPLICATION FOR MEMBERSHIP IN

THE NATIONAL MASONIC ACCIDENT ASSOCIATION,

Des Moines, Iowa.

This application is not binding upon the Association until approved by the Secretary.

BENEFITS

| Death or Permanent Total Disability Benefit. | Weekly Benefit for Total Disability not Exceeding 200 Consecutive Weeks. | Weekly Benefit for Partial Disability, not Exceeding 26 Consecutive Weeks. | Loss of Hand and Foot, Both Hands, Both Feet, or Both Eyes. | Loss of Right Hand. | Loss of Left Hand or Either Foot. | Loss of One Eye. |
|---|---|---|---|---|---|---|
| Class  1  $5,000 | $25.00 | $5.00 | $5,000 | $2,500 | $1,250 | $625 |
| "       2   3,000 | 20.00 | 4.00 | 3,000 | 1,500 | 750 | 375 |
| "       3   2,000 | 15.00 | 3.50 | 2,000 | 1,000 | 500 | 250 |
| "       4   1,500 | 12.50 | 3.00 | 1,500 | 750 | 375 | 200 |
| "       5   1,250 | 10.00 | 2.50 | 1,250 | 625 | 325 | 150 |
| "       6   1,000 | 7.50 | 2.00 | 1,000 | 500 | 250 | 125 |
| "       7     750 | 5.00 | 1.50 | 750 | 375 | 200 | 100 |
| "       8     250 | 5.00 | 1.50 | 250 | 125 | 100 | 50 |

I hereby apply for membership in the National Masonic Accident Association of Des Moines, Iowa, my membership to be based upon the classification of my occupation and the following statement of facts, which I warrant to be true and complete, and I agree that in no case shall my weekly benefits exceed the amount to be paid in case of accidental death, and that no weekly benefits shall be paid in addition to the sum named in the above table of benefits in case of death or for the loss of one or both eyes, hands or feet.

The certificate issued to him on this application stated that it was issued in consideration of the warranties and agreements in the application which was indorsed thereon and made a part thereof, and subject to all of the conditions and provisions of the articles of incorporation and by-laws of the association. It also contained the following provision: " And subject to such conditions and provisions, which are hereby made conditions precedent to the accruing of payment of benefits, such member is entitled to the benefits appertaining to the division and class of which he is a member under article 10 of the articles of incorporation and the classification contained therein, which classification of benefits is a part of the said application, indorsed on the back thereof." A copy of the application was printed on the

back of the certificate, and there was also printed thereon what purported to be a copy of the article and classification of benefits thereunder, referred to in the certificate. It was as follows, so far as material here:

Article 10 of the Articles of Incorporation.— The members of this Association shall be so classified that the benefits shall be proportionate with the hazard of the occupation of the certificate holder, and all certificates must comply with said classification. The benefits in the several classes shall be as follows:

| Death or Permanent Total Disability Benefit. | Weekly Benefit for Total Disability, not Exceeding 200 Consecutive Weeks. | Weekly Benefit for Partial Disability, not Exceeding 26 Consecutive Weeks. | Loss of Hand and Foot, Both Hands, Both Feet, or Both Eyes. | Loss of Right Hand. | Loss of Left Hand or Either Foot. | Loss of One Eye. |
|---|---|---|---|---|---|---|
| Class 1  $5,000 | $25.00 | $5.00 | $5,000 | $2,500 | $1,250 | $625 |

As a matter of fact, the articles of incorporation did not provide for the payment of a permanent total disability benefit of $5,000, and the appellant contends that it is not liable therefor, notwithstanding the certificate, because of the general rule that a member of a mutual benefit association is charged with knowledge of the articles of incorporation and by-laws under which the association acts, and, further, because the certificate does not in fact provide for the payment of such sum for such disability. A fair and ordinary construction of article 10 and the classification thereunder, as printed on the certificate, can leave no doubt as to the meaning sought to be conveyed thereby. To our minds, it very clearly conveys the impression that it provides for the payment of $5,000 for permanent total disability as distinguished from the payment of weekly benefits for a total disability which is not permanent, and we think such would be the general understanding thereof. Admitting that its

meaning is doubtful, it should be construed most strongly against the appellant.

It is a familiar rule that the application for membership and the certificate thereof, together with the articles of incorporation and by-laws, constitute the contract between the members and the association, and it is the general holding that the member is charged with knowledge of the powers of the association as declared by its charter and by-laws. But in this case the association entered into a contract that expressly made article 10 of its charter a part thereof, and undertook to set out in said contract the article and classification thereunder verbatim. Whether its officers made a mistake or whether they were guilty of a gross fraud in so doing, is of little moment now. The insured had the undoubted right to presume, and to act on such presumption, that the association had embodied in its contract with him a correct copy of the article named, and that the contract furnished him the precise indemnity named therein. It was made a part of the application and certificate by which he was bound, as well as the association. Had he made a false statement in his application, either through inadvertence, ignorance, or mistake, his beneficiary, suing on the certificate, would be estopped from proving that the statement was so made. The insured entered into the contract relying on its terms, and it is but just and equitable that the insurer shall not be permitted to take advantage of a mistake in its contract for which it is solely responsible, whether it be a mutual association or otherwise. If it was a mistake on its part, the insured or his beneficiary should not be compelled to pay therefor, and, if a deliberate fraud, the association has no standing in court. In either event we think the appellant estopped on the question. *Watts v. Ass'n,* 111 Iowa, 96. *Hirsch v. Grand Lodge,* 56 Mo. App. 101, was a case where there was an erroneous publication of the by-laws in a pamphlet which was read by one who was afterwards induced to join on account of the

5. ESTOPPEL.

representations therein made. The false by-laws were not made a part of his contract by express incorporation therein, as in this case, and it was held that the member was bound by the true by-law.

Section 10 of the appellant's by-laws provides:

No benefits shall accrue or be paid because of any disappearance of any member, nor for any bodily injury or death to which there shall be no external or visible marks upon the body (the body itself, in case of death, not being deemed such mark); nor for any death or disability happening directly or indirectly, wholly or in part, accidentally or otherwise because of or resulting in or from any disease or bodily or mental infirmity, hernia, orchitis, fits, etc., nor shall any benefits whatever accrue or be paid to any member or his beneficiary, unless the said member or his beneficiary shall have furnished the association (within the time prescribed by these by-laws) with absolute and satisfactory proof that the death or disability of the said member was purely accidental and the direct result of an accident, and that the accident was the sole and only cause of the said member's death or disability.

6. INSTRUCTIONS: accidental disability.

As we have heretofore seen, there were external marks on the head and body of the deceased indicating a fall, and the evidence tended to show that a fall might have produced the rupture of the artery. But there was also evidence tending to show a diseased condition of Mr. Haverstock's arteries at the time he received the injury, and that his disability may have been caused directly or indirectly, wholly or in part, by such diseased arteries. The appellant asked instructions directing the jury that there could be no recovery if it found that the disability was caused directly or indirectly, wholly or in part, by the disease or bodily infirmity afflicting Mr. Haverstock at the time of the alleged accident. These were refused, and the court on its own motion instructed that, if Mr. Haverstock sustained a fall, and if the bursting of the artery was caused thereby, the plaintiff would

be entitled to recover, even though it was found that the artery was in a weakened condition by reason of disease. This instruction cannot, in our judgment, be sustained, because it entirely ignored the stipulation in the contract that there should be no liability for a disability happening directly or indirectly, wholly or in part, because of or resulting in or from any disease or bodily infirmity. As long as parties who are capable of so doing shall be permitted to make their own contracts, it is the plain duty of the court to enforce them as they are written, unless fraud or public policy shall intervene; and if it be true, as the jury might have found under the evidence, that the diseased condition of the arteries aggravated the effect of the accident, if there was one, and contributed to the disability occasioned thereby, then, under the express terms of the contract, there was no liability on the part of the association. *Commercial Travelers' Mut. Acc. Ass'n v. Fulton et al.,* 24 C. C. A. 654 (79 Fed. 423); *Natl. Masonic Acc. Ass'n v. Shryock,* 20 C. C. A. 3 (73 Fed. 774); *Fetter v. Fidelity & C. Co.,* 174 Mo. 256 (73 S. W. Rep. 592, 61 L. R. A. 459, 97 Am. St. Rep. 560); *Sharpe v. Com. Trav. Mut. Acc. Ass'n,* 139 Ind. Sup. 353 (37 N. E. Rep. 353); *Lawrence v. Accidental Ins. Co.,* L. R. 7 Q. B. Div. 216; *Western Com. Trav. Ass'n v. Smith,* 29 C. C. A. 223 (85 Fed. 401, 40 L. R. A. 653); *Trav. Ins. Co. v. Selden,* 24 C. C. A. 92 (78 Fed. 285); *U. S. Mut. Acc. Ass'n v. Barry,* 131 U. S. 100 (9 Sup. Ct. 755, 33 L. Ed. 60); *Freeman v. Mer. Mut. Acc. Ass'n,* 156 Mass. 351 (30 N. E. Rep. 1013, 17 L. R. A. 753); 1 Cyc. 262. And see *Delaney v. Modern Acc. Club,* 121 Iowa, 528.

As we understand the appellee's argument, the correctness of the above rule is not seriously questioned, but it is contended that the court so instructed in the fourth paragraph of its charge, and, further, that there was no competent evidence as to the existence of the disease at the time of the injury. The instruction referred to was to the effect that, if the bursting of the

7. EXPERT EVIDENCE.

artery was caused solely by its weakened condition, there could be no recovery, and this was followed by the instruction directing that there could be a recovery even though the diseased condition of Mr. Haverstock did contribute to his disability. The testimony clearly showed a diseased condition of the arteries at the time of Mr. Haverstock's death, and physicians of skill and reputation testified that the condition probably existed at and prior to the time of the alleged accident; that this condition greatly weakened the arteries; and that because thereof a blow "or some other exciting cause might produce apoplexy or paralysis, when in a healthy condition these results would not follow." We know of no better evidence of the probable effect of disease than the testimony of skilled medical men, and think the testimony in this case competent, and its weight for the jury. alone.

For the error pointed out, the judgment is *reversed*.