ILLINOIS COMMERCIAL MEN'S ASS'N v. PARKS.

(Circuit Court of Appeals, Seventh Circuit. April 19, 1910.)

No. 1,606.

1. INSURANCE (§ 825*)—ACTION ON ACCIDENT POLICY—QUESTIONS FOR JURY.

In an action on an accident policy to recover for the death of the insured who fell on a sidewalk and received severe injuries, dying a few minutes later, issues of fact were made by the pleadings (1) whether the fall was accidental, caused by a misstep or stumble, or resulted from a diseased condition, and (2) whether, if accidental, the injury received was the cause of death "independent of all other causes" within the meaning of the policy. There was evidence that deceased stumbled and fell, but that there was no obstruction in the sidewalk at the place. Evidence was introduced by defendant that an autopsy made in its interest tended to show diseased conditions of the heart and kidneys and by plaintiff that deceased was apparently in the best of health at all times up to the moment of his fall, and medical testimony that it was improbable that the chronic diseased conditions described could have existed and reached a fatal stage without prior manifestation in the health of deceased. There was a conflict of medical testimony as to whether the injuries received from the fall were sufficient alone to cause death. *Held*, that on such testimony both issues were properly submitted to the jury.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 825.*]

2. INSURANCE (§ 817*)—ACCIDENT INSURANCE—RISKS AND EXEMPTIONS IN POLICY—CAUSE OF DEATH—BURDEN OF PROOF.

An accident policy expressly made the application and by-laws of the association a part of the contract, and provided that its liability for the death of the insured should be subject to all the provisions of the by-laws. One by-law limited such liability to death from "bodily injuries which shall * * * independently of all other cause result in the death of said member" and another provided that "the association shall not be liable to any person for any indemnity or benefit for injuries or death * * * in case such injuries shall occur as the result, wholly

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or partially, directly or indirectly of * * * disease, bodily or mental infirmity. * * *" *Held* that, in an action for the death of the insured, following a fall upon a sidewalk by which he was injured, the burden of proof was on the plaintiff to establish not only that the injury was accidental and was the proximate cause of death, but that such accidental injury was the sole cause of death independently of any pre-existing disease or bodily infirmity as a contributory cause thereof.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 817.*]

In Error to the Circuit Court of the United States for the Northern District of Illinois.

Action by Florence E. Parks against the Illinois Commercial Men's Association. Judgment for plaintiff, and defendant brings error. Reversed.

The plaintiff in error is an accident insurance association and defendant below, in a suit brought by the beneficiary under one of its policies to recover the amount thereby insured, wherein trial of the issues resulted in a verdict and judgment in favor of the plaintiff (defendant in error); and various errors are assigned for reversal under the present writ. The only assignments which require discussion are stated in the opinion, together with the contract terms and evidence involved in the inquiry.

James Maher and Charles T. Thompson, for plaintiff in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge. The Illinois Commercial Men's Association issued the policy of accident insurance in suit to Rodney N. Parks, on December 5, 1903, naming his wife, Florence E. Parks (defendant in error), as the beneficiary. On September 30, 1904, the assured received severe injuries from a fall on a sidewalk, in Springfield, Minn., striking the corner of an iron hitching post and rail, wounding his chest and fracturing his first left rib, and death ensued within a few minutes. In her suit thereupon the beneficiary recovered the verdict and judgment from which this writ of error is brought, and the only issues of fact in controversy, under the pleadings, stipulations and testimony, are: (1) Whether the fall of the assured (above mentioned) was accidental, caused by a misstep or stumble on or off the sidewalk, or resulted alone from a diseased condition; and, (2) if accidental, Was the injury arising from the fall the cause of death, "independent of all other causes" within the meaning of the policy of insurance?

Under the first issue, it is undoubted that the testimony of the single witness who saw the occurrence tends to establish (prima facie) an accidental fall, through a stumble by the assured while turning on the sidewalk from conversation with another person, to start in the direction of the hotel where he was registered. It appears, however, that there was no obstruction in the sidewalk at the place where he was observed to stumble (as described "over his feet"), so that this testimony is not inconsistent with the contention on behalf of the plaintiff in error (resting on other circumstances in evidence), that the

fall may have been caused by disease of the heart. The second issue is one of mixed law and fact, arising under the terms of the policy and predicated on testimony of an autopsy held at Minneapolis, in the interest of the insurer (after the arrival there of the body), tending to show diseased conditions of the heart and kidneys. This testimony is applicable as well to the first issue; its credibility and force under either issue was for the jury to determine, and comment thereon is not deemed proper, beyond the remark that it was material and raised both issues. Supplemented by other expert opinion testimony introduced by the plaintiff in error, the evidence tended to establish the defense that the diseased conditions appearing on the autopsy were either the cause of the fall and death of the assured, or contributory causes of death, if not of the fall, and that the injuries received from the fall upon the hitching post and rail were insufficient to cause death without such diseased conditions. On the other hand, the testimony on the part of the beneficiary tends to prove that the assured was in excellent health, apparently free from disability or disorder of heart or kidneys, throughout the 30 years of his married life with the beneficiary, and up to the instant of his fatal fall; that he was transacting business with a customer immediately before starting for the hotel and then appeared to be in the best of mental and physical condition; that it is improbable (according to other expert opinion testimony) that the chronic diseased conditions, so described in the testimony for plaintiff in error as the cause of death, could have existed and reached the fatal stage without prior manifestation in the health of the assured; that the injury and shock received from striking the hitching post were sufficient alone to cause death; and that the evidence that the assured "grabbed the railing" after his tumble was indicative of consciousness therein.

Under the evidence above recited, we are of opinion that error is not well assigned for refusal of the trial court to instruct the jury to find in favor of the plaintiff in error, even if the contract of insurance be interpreted as sought on its behalf. The testimony in support of liability was sufficient, to say the least, to authorize submission of the issues to the jury, and the only meritorious question raised is whether error appears in an instruction to the jury reading as follows:

"There is evidence here that at the time the autopsy was performed, within a few days after the death of Rodney N. Parks, the heart of Parks and the kidneys of Parks appeared to have been in an unhealthy condition. There is evidence before you, from which you are authorized to infer and believe and conclude that at the time Parks died he had a defective heart and defective kidneys. Now, in connection with that situation, I instruct you, gentlemen of the jury, that even though you believe that at the time Parks died, at the time he struck the corner of this hitching post or hitching rack, at the time his body started from an erect attitude to fall, his heart or kidneys, or both his heart and kidneys were in a defective and unhealthy condition, and that at the time he started to fall he was not dying—to put it in common language—was not 'dropping dead,' and that he was falling from some accidental cause, such as stumbling or slipping or getting his feet tangled, and struck the corner of this hitching rack and a blow was received thereby upon his chest, which caused him to die, you will find a verdict solely and independently of all other causes, in favor of this plaintiff, even

though you may believe from the evidence that death might not have or would not have resulted had it not been for the unhealthy heart or the unhealthy kidneys or both, because we are dealing with causes and not conditions. The defective heart and defective kidneys went to make up the condition. The blow which the man received, if it caused the death, because of the defective heart and defective kidneys, was the sole cause of death."

The contract of insurance in suit consists of three parts: (1) The so-called policy; (2) the application for membership; and (3) the by-laws of the association. (1) The policy expressly recites its issuance, "In consideration of the application for membership * * * referred to and made a part of this contract, and of each of the statements and declarations therein," which are adopted and warranted to be true, and "the only statements or declarations upon which this contract is made"; and it promises payment of $5,000, "in the case of the accidental death of said member" within 90 days after proof of accidental death, subject, however, to "all the provisions of the by-laws of said association." (2) The application is made up of 23 questions and answers, followed by this recital:

"I am aware that the benefits of this association do not extend to hernia, orchitis or to any bodily injury or death happening directly or indirectly in consequence of disease, or to any injury of which this association is not notified within fifteen (15) days of its occurrence, or to any death or disability which may have been caused wholly or in part by mental or bodily infirmities or disease."

Other recitals are not involved herein. (3) The by-laws introduced as part of the contract are sections 2 and 8 of article 7, reading as follows:

"Whenever any member of this association in good standing, shall, through external, violent and accidental means, receive bodily injuries which shall, within six (6) months from and after the date of said accident, and independently of all other causes, result in the death of said member, the beneficiary named in the application of said member, or, in the case of the death of said beneficiary, or in case none were named, then the executor or administrator of the estate of said deceased member, shall be paid (except as provided in section 8, article 7, of these by-laws), within ninety days after the receipt by the association of proof, satisfactory to the board of directors, of said injuries and of the accidental cause thereof, the sum of five thousand dollars ($5,000.00), less any and all sums previously paid to said member as indemnity on account of said accident, in full satisfaction of any and all claims on account of said member; provided, however, such member shall be totally disabled as a result of such injury, and such total disability shall be continuous from the time of the injury to the time of death of said member. But no death claim will be paid by this association unless, within fifteen days after the happening of such accident, said member, or in case of his death or inability, then some person on behalf of or his beneficiary shall have sent to the secretary of this association written notice of said accident, and unless the death of said member occurs within six months after the date of said accident, and unless said claim for death benefit be presented to the association within thirty days after the death of the deceased member, together with full proof of the death and of the particulars of the accident claimed to have caused said death, in manner and form as prescribed by the board of directors."

"Sec. 8. This association shall not be liable to any person for any indemnity or benefit for injuries, or death, or loss of limb or of eye resulting from an accident to a member which happens while said member was violating any law; was not in the exercise of due diligence for his self protection; or was in any degree under the influence of intoxicating liquors or narcotics, or which

shall happen on account of, by reason of, or in consequence of, the use thereof; nor for injuries or death in any case in which there is no visible mark of injury on the body of the member; or in case such injuries shall occur as the result, wholly or partially, directly or indirectly, of any of the following causes, conditions, or acts, or while the injured member was under the influence of or affected by, any such cause, condition or act, to wit: Disease: bodily or mental infirmity; hernia; orchitis; fits; vertigo; sleep walking; medical or surgical treatment; intentional or unintentional taking of poison; voluntary inhaling of gas; contact with poisonous ivy; intentional injury inflicted by the insured while sane or insane; voluntary over-exertion; wrestling; fighting; racing; professional ball or professional football playing; and this association shall not be liable to any person on account of any member who, while sane or insane, shall take or destroy his own life; nor shall this association be liable to any person on account of any member who may or shall be injured while acting as a soldier or sailor."

The insurance contract thus made and accepted, with its express agreement by the parties in reference to their understanding of the terms of liability in question, we believe to be free from the difficulty which has appeared in construing the terms of various other accident insurance policies, involved in cases cited in the briefs, both for and against the foregoing instruction to the jury. These citations present two divergent lines of decision in the interpretation of the various terms employed in such policies by way of limiting the cause or causes of death or disability for which indemnity is provided, diverging, as we understand their import, over the inquiry whether the general rule of proximate cause is applicable and controlling. The cases which are relied upon for support of the instruction adopt that rule as the ultimate test of liability under such policies, seemingly treating and accepting Freeman v. Mercantile Accident Assoc., 156 Mass. 351, 353, 30 N. E. 1013, 17 L. R. A. 753, as a leading precedent therefor. In that case, however, the policy for indemnity in the event of death or disability from an accident, stated the terms of liability to be "where the injury is the proximate cause of the disability or death," and the familiar doctrine was upheld thereupon: that "the law will not go further back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions"; and that recovery was authorized for death thus caused by an accident, "even if he would not have died if his * * * previous state of health had been different." So, in reference to policies limited either (a) to injuries through "purely accidental causes," which injuries "shall solely and independently of all other causes, necessarily result in death" (Continental Casualty Co. v. Lloyd, 165 Ind. 52, 59, 73 N. E. 824), (b) to "bodily injuries sustained through * * * accidental means" if death results "from such injuries, independent of all other causes" (Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 258, 267, 73 S. W. 592, 61 L. R. A. 459, 97 Am. St. Rep. 560), or (c) death from accidental injuries, if death "shall result from such injuries alone" (Modern Woodman Accident Ass'n v. Shryock, 54 Neb. 250, 256, 267, 74 N. W. 607, 39 L. R. A. 826), these authorities (and others cited) uphold the above-stated doctrine of proximate cause as controlling for their interpretation respectively. Nevertheless, each of such authorities applies the doctrine, with the issue of proximate

cause defined therein as one of fact for determination by the jury under the testimony; and were such rule of interpretation unquestionable, no sanction thereunder would appear for withholding from the jury the issue of fact presented accordingly in the case at bar.

Under the present contract, however, we are not required to determine whether the true rule of interpretation was adopted in the above cited cases; nor, whether the indisputable limitation of liability under the one by-law (section 2) to "bodily injuries which shall, * * * independently of all other cause, result in the death of said member," extends only to the proximate cause of death. The other by-law above quoted (section 8) is alike made a part of the contract, and it provides that the "association shall not be liable to any person for any indemnity or benefit for injuries or death * * * resulting from an accident to a member which happens" under several contingencies recited (not involved here), "or in case such injuries shall occur as the result, wholly or partially, directly or indirectly, of any of the following causes, conditions, or acts, or while the injured member was under the influence of, or affected by any such cause, condition or act, to wit, disease, bodily or mental infirmity, hernia, orchitis, fits, vertigo, sleep walking, medical or surgical treatment, intentional or unintentional taking of poison." On reference to the wording of the context which names other contingencies, it is contended that the exemption so defined is not thereby made applicable to causes of death. But whatever of force might otherwise appear in this contention of ambiguity in these terms (for construing the one above quoted in favor of the assured) is expressly set aside, as we believe, by the above-quoted stipulation contained in the application and "made a part of this contract." While such statement could not become operative alone to create new contract terms, it plainly amounts to an agreement by the contracting parties upon the meaning of the terms referred to, in so far as ambiguity may otherwise appear therein, and requires their interpretation accordingly. The contention is untenable that this statement must be rejected, in conformity with the ruling of Accident Ins. Co. v. Crandal, 120 U. S. 527, 533, 7 Sup. Ct. 685, 30 L. Ed. 740, in reference to like remarks made in an insurance application, for the reason there pointed out, that "the whole application is not made a part of the contract"; so that, upon the distinctions stated in the opinion, the statement therein not included in the terms was deemed one "not of fact but of law"—merely as to "the effect of the insurance"—and without force to "control the legal construction of the policy afterwards issued." Such view is obviously inapplicable to the present statement, not only incorporated in the contract, but distinctly made in reference to an express provision thereof which might otherwise be misunderstood.

We are of opinion, therefore, that the ultimate issue of liability under this contract, in the event of a finding of accidental injury, is not whether such injury was the proximate cause of death, but whether it was the efficient cause, without the intervention of pre-existing disease or bodily infirmity as a co-operative cause of death—within the extended line of authorities cited under analogous provi-

sions, whereof the following are deemed sufficient examples: National Masonic Acc. Ass'n v. Shryock, 73 Fed. 774, 775, 20 C. C. A. 3; Commercial Trav. Mut. Acc. Ass'n v. Fulton, 79 Fed. 423, 426, 430, 24 C. C. A. 654; Sharpe v. Com. Trav. Mut. Acc. Ass'n, 139 Ind. 92, 93, 95, 37 N. E. 353; Binder v. National Masonic Acc. Ass'n, 127 Iowa, 25, 102 N. W. 190, 194; White v. Standard Life & Acc. Ins. Co., 95 Minn. 77, 103 N. W. 735, 736, 884. An issue of fact under these provisions was presented by the evidence, and instructions in conformity with the foregoing view became needful for its submission, entirely apart from the primary question whether the fall resulted from accident or disease. If the jury found from the evidence that the immediate injury was not caused accidentally, such finding would leave no further inquiry open under the policy; requiring a verdict against recovery. If they found, however, that the evidence upon that question was in favor of accidental cause for the fall, the other above-mentioned issue of fact was not involved therein, but remained for determination under conflicting evidence upon one and the other phase of contract liability; so that explicit instructions of law were essential, both for interpretation of the contract and for application of the testimony thereunder in accord with these propositions which are deemed applicable: That the burden of proof was on the beneficiary under the policy, not only to establish that the injury from which death ensued was accidental, but that such accidental injury was the sole cause of death, independently of any pre-existing disease or bodily infirmity as contributory cause thereof; that if the testimony further established that the assured was then affected by disease or bodily infirmity, which caused his death, either directly therefrom, or indirectly, as its natural result ensuing such accidental injury, so that the accident would not have caused his death without such pre-existing disease or infirmity, the contract exempted the association from liability therefor; that recovery was not authorized under the contract for death caused partly by disease and partly by accidental injury (National Masonic Acc. Ass'n v. Shryock, supra; Commercial Trav. Mut. Acc. Ass'n v. Fulton, supra); that if the evidence, however, established not only the fact of accidental injury, but the sufficiency thereof to cause the death independently of other causes, and the testimony in reference to pre-existing disease or infirmity failed to establish such disease or infirmity as indirect or contributory causes of such death, liability therefor was within the contract terms and recovery was authorized.

The instruction complained of (as above quoted), under which the case was submitted to the jury, is inconsistent with the foregoing view and was erroneous, as we believe, both in its interpretation of the contract and in withholding the issue of fact from the jury. For that reason the judgment must be reversed; and reversal is directed accordingly, and the cause remanded to the Circuit Court for a new trial.