**Marie Crandall, Appellee, v. Continental Casualty Company, Appellant.**

**Gen. No. 5,749.**

1. INSURANCE—*construction of contract.* Where there is no ambiguity or uncertainty in a contract of insurance courts are bound to construe it according to its plain terms.

2. INSURANCE—*injury fatal because of pre-existing disease.* Where the insured dies from the contributing causes of choking on food and a pre-existing abscess in the oesophagus, no recovery can be had under a policy providing for payment if the insured

"should receive bodily injury which was effected directly and independently of all other causes through external violent and purely accidental means resulting in death of insured necessarily and solely from such injury."

3. INSURANCE—*when immaterial whether pre-existing disease which contributed in causing death was alone fatal.* Where choking on food and a pre-existing abscess in the oesophagus are the contributing causes of the death of the insured it is immaterial whether the abscess alone was necessarily fatal when recovery is sought on a policy providing for payment in case of death from bodily injury effected directly and independently of all other causes through external, violent and purely accidental means.

Appeal from the County Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding. Heard in this court at the October term, 1912. Reversed with finding of facts. Opinion filed March 12, 1913.

WOLFENBARGER & MAY and M. P. CORNELIUS, for appellant; MANTON MAVERICK, of counsel.

ROBERT N. MCCORMICK, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

This is a suit in *assumpsit* upon a health and accident insurance policy issued by appellant to the husband of appellee, May 11, 1905. The insured died September 8, 1911, and appellee is his beneficiary. The declaration sets out the policy in full, but the question here arises on the promise to pay the sum of $400 if the insured "should receive bodily injury which was effected directly and independently of all other causes through external, violent and purely accidental means resulting in death of insured necessarily and solely from such injury" within ninety days thereafter. It is averred that on September 6, 1911, the insured, "while in the act of eating food, accidentally choked thereon, and there and thereby received personal bodily injury which was effected directly and independently of all other causes through

external, violent and purely accidental means as aforesaid, and from which personal bodily injury, within ninety days after receiving the same, the death of the insured resulted necessarily and solely from such injury." The plea of general issue and a special plea were filed, the special plea setting up a release. In the view we take of the case, it will be unnecessary to consider the issue raised on the special plea. The verdict and judgment was for plaintiff.

Appellant says there is no dispute about the facts. Appellee says certain of the important facts are not in dispute and does not point out any material ones that are in dispute. The evidence disclosed without contradiction that Alonzo L. Crandall, the insured, was a man about fifty years of age, apparently in the average state of health of a man of his years, employed in the freight department of a local railroad and had been steadily employed at manual and clerical work for a number of years before his death, except for about a month in October, 1910, when he was suffering from an accident and injury for which he received a payment from appellant under this same policy; that he apparently recovered from that injury and up to the time of the accident in question here had no knowledge that any disease, or serious bodily infirmity existed in consequence of that injury; that at noon on September 6, 1911, he was eating some meat pie and a portion of it became lodged in the oesophagus about fourteen inches from the teeth, which brought on coughing and straining in an effort to dislodge the obstruction, which was not accomplished, and he went to work as usual about twenty minutes later. He came home from work that evening, could not swallow anything, and got a tube from a neighbor and with it tried to dislodge the obstruction, but without success. The next morning he was still unable to swallow but went to work as usual. He was suffering all the time from the effect of the obstruction and about eleven o'clock went to Doctor

Cooper, who after three attempts succeeded in pushing it into the stomach. The insured was then able to swallow water, but was in great pain afterwards, and the doctor gave him a hypodermic of morphine, and called on him at his home twice that day and once in the morning of the next day (September 8) but the patient grew worse from the time of the operation and died about two P. M. of that day. There was an autopsy which disclosed an abscess, which would hold from five to six ounces of pus, about as large as a good sized pear, underneath or behind the oesophagus and an opening in the oesophagus right opposite the abscess. The abscess had been ruptured in the mediastinum space and part of its contents discharged into the pleural cavity. The medical testimony establishes without question that the contributing causes of the death were the choking and the abscess; that the insured might not have choked at the time he did, and would not have died at the time he did but for the abscess. Doctor Cooper testified, ''The rupture of the abscess caused his death. The presence of the abscess, I think, had some influence in causing the choking. In my opinion the abscess was one of the causes of the death of the insured. The abscess was one of the contributing causes of the death of Mr. Crandall. I do not think Mr. Crandall would have died at the time he did die, if it had not been for the abscess. The choking, and the treatment I administered to Mr. Crandall on September 7, would not have brought about the death of a man in a normal condition and free from disease. * * * It is possible * * * that nature would have taken care of that abscess and that Mr. Crandall would have recovered had it not been for his choking. The abscess, so far as I was able to judge, was of some considerable standing. The longer the abscess continued, the greater the possibility of nature absorbing it. It is my theory that this abscess was of long standing and

had been discharged into the oesophagus.  *  *  *
The fact that it is of long standing would indicate that
·nature is taking care of it.  *  *  *  I think it possible
*  *  * that it would have been discharged out through
the oesophagus and have carried out of the system in
a natural way, and entirely healed, had it not been
for a sudden rupture of the abscess.  *  *  * I think
that Mr. Crandall would not have died at the time he
did but for the choking. He might have lived and
entirely recovered from that (the abscess)  *  *  *.
It had ruptured subsequent to the choking. It does
not necessarily follow that an abscess of that sort will
be taken care of by nature. It is very probable that
Mr. Crandall might have died of that abscess eventu-
ally.  *  *  * I think it is very possible that the ab-
scess would have eventually caused his death.  *  *  *
It is very possible that Mr. Crandall might have
lived indefinitely with that condition. The rupture
of an abscess in that cavity would be a shock to the
system. Mr. Crandall died from the shock of distrib-
uting this stuff in his system. Nature has provided
no way or means of taking care of it from the pleural
cavity." There was no other medical testimony in
the case. Therefore it is beyond dispute that the in-
jury produced by the lodging of the meat in the oesoph-
agus caused the death of the insured only because
of the presence of the abscess.

The case presents the question whether an injury
fatal only ·because of pre-existing disease or bodily
infirmity can be said to be the sole cause of death;
whether in such case death can be said to result neces-
sarily and solely from such injury. But first, "Did
the deceased receive personal bodily injury which was
effected directly and independently of all other causes,
through external, violent and purely accidental
means?" And if he did, then "Did the death of in-
sured result necessarily and solely from such injury?"
If the second question is answered in the negative, it

is not necessary to consider the first. Counsel for appellant, while not conceding the first question, have devoted their attention principally to the second. We will first consider the second question: Did the death of insured result necessarily and solely from such injury? It must be borne in mind that there is no evidence showing or tending to show that the injury caused the abscess; neither is there any evidence that the accident, independent of the abscess, caused the death. There is no doubt but that at the time of the accident the abscess was present and had existed for some time and that it did co-operate with the accidental injury to produce death. In reviewing the authorities it is helpful to divide accidental injuries associated with disease or bodily infirmities into three classes.

First. Accidents that cause the disease which causes death; as for instance, accidents that cause septicaemia or blood poisoning, followed by death.

Second. Accidents that cause the death of a person suffering from disease or bodily infirmity, which had no causal connection with the death; as for instance, death from gun shot wound of a person suffering from tuberculosis or heart disease.

Third. Accidents to persons suffering from pre-existing disease or bodily infirmity, where death results from the accidental injury, and the pre-existing disease or infirmity, acting together; as for instance, an accidental injury to a person in the last stages of heart disease, that only because of such disease, results in sudden death.

In considering the various cases arising on accident insurance contracts containing similar provisions, we must bear in mind that the policy under consideration here is not one with a general undertaking to answer in case of death, or even death from accidental causes, with a clause excepting specific causes and thus limiting the general liability. Questions arise as to the order and burden of proof under policies so framed.

There are also found cases where the undertaking is limited, as in this case, by its own terms as first stated, yet followed by exceptions of specified causes that, without such express exceptions, could not have fallen within the stipulated undertaking to pay. This form of policy seems to have been quite usual in the time of the earlier cases and less common in later years. We see no difference in construction of an insurance contract where the undertaking is as first stated clearly to answer only for death from some limited cause or causes, whether it is followed by express exception of some cause not there included, or not. If the stipulation be to pay in case of death from poison, it is immaterial whether or not it be followed by an express provision that the insurer will not be liable in case of death from some other specified cause. The plaintiff must aver and prove death from poison. Yet in discussing cases containing such useless exceptions, the courts have often naturally referred to them as express provisions that the insurer would not be liable in such event. The legal effect of the policy is the same whether the redundant provision is present or not.

Counsel for the respective parties direct our attention to Illinois cases holding that policies of insurance being signed by the insurer only, and the language being that of the insurer, the provisions of the policy are to be construed most favorably for the insured in case of doubt or uncertainty in its terms so as not to defeat, without a plain necessity, his claim to the indemnity which in making the insurance it was his object to secure. But where there is no ambiguity or uncertainty in a contract of insurance, courts are in duty bound to construe the contract according to its plain terms and must not indulge in far-fetched constructions to fix a liability upon the company. The cases of Healey v. Mutual Accident Ass'n, 133 Ill. 556 and Crosse v. Knights & Ladies of Honor, 254 Ill. 80, are in point, but the rule has been many

times announced in this state and is a general rule of construction often repeated in decisions of other states and the text books. It is not necessary to point out further authorities sustaining and illustrating it. It is a general and well recognized rule of construction of written contracts, applied to insurance policies.

Our Supreme Court in Central Accident Ins. Co. v. Rembe, 220 Ill. 151, had under consideration a case involving the queston of cause of death. The insurance contract provided "that upon the death of the insured caused by external violence and accidental means the company would pay," etc., and as plead in the first count of the declaration was followed by this excepting clause, "This policy does not cover  *  *  *  death  *  *  *  resulting wholly or partially from any of the following causes:  *  *  *  voluntary or involuntary taking of poison or contact with poisoned substance." The insured, who was a physician, while preparing medicine for a patient in removing the cork from a bottle, accidentally broke the neck of the bottle, a piece of glass cutting a small wound in his finger. Blood poisoning followed and he died within a few days from its effect. There was evidence tending to prove that the infection was introduced at the time the wound was inflicted and the question arose whether his death should be held to have resulted wholly or partially from coming in contact with a poisoned substance. The court, in discussing the question, says, "The cause of the death, as we understand it, was the wound in the finger, by means of which blood poisoning intervened," and cites with approval Martin v. Manufacturers' Accident Indemnity Co., 151 N. Y. 94, holding that inoculation of the wound at the very time of its infliction is a part of the injury, and the immediate cause of the death. Quotes from Western Commercial Travelers' Ass'n v. Smith, (56 U. S. App. 393), 40 L. R. A. 653; "If the death was caused by a disease which was not the result of any bodily infirmity or

disease in existence at the time of the accident, but which was itself caused by the external, violent and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such case the disease is an effect of the accident; the incidental means produced and used by the original moving cause to bring about its fatal effect; a mere link in the chain of causation between the accident and the death." Quotes from Delaney v. Modern Accident Club (121 Iowa 528), 63 L. R. A. 603; "Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound, and not of an independent cause, is properly attributed to the wound; and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous." The court concludes that the plaintiff was entitled to recover on the theory that the wound of the finger was the cause of death, but also says the plaintiff was entitled to a verdict under the other count of the declaration in which this question was not involved. This court in U. S. Health & Accident Ins. Co. v. Harvey, 129 Ill. App. 104, considered a similar question and said, "If the resulting disability is the effect of the accident, so as to be a mere link in the chain of causation between the accident and the disability, then the disability must be attributed to the accident alone, and is not excepted from the risk. The puncture by the wire or nail was within the terms of the policy, and blood poisoning resulting from, and being caused by the accident, was a disease caused by the accidental wound and is within the policy." Again in Coulter v. Travelers' Protective Ass'n, 144 Ill. App. 255, this court passed on an instruction, "That though the jury believe from the evidence that the death of Coulter was caused in part by bodily infirmity or disease; yet if you believe from the evidence that said Coulter received accidental injuries and that such

bodily infirmity or disease was caused by or was a
natural, direct, proximate and necessary result of
such accidental injuries and that such accidental
injuries were the direct cause of his death, then the
fact that such bodily infirmities or disease contributed
to cause the death of the deceased would not consti-
tute a defense to this action,'' and held the instruc-
tion good and in accordance with the rule announced
in the Rembe and Harvey cases, *supra*. In none
of these three Illinois cases was the question pre-
sented of pre-existing disease combined with the
accidental injury. The court only held that in case
of an injury causing the disease which caused death,
the injury is to be considered the only cause of
death; but in discussing that question and citing
authorities, seem to have had in mind the difference
between a disease that is caused by the injury and a
pre-existing disease. In Moore v. Illinois Commercial
Men's Ass'n, 166 Ill. App. 38, the Appellate Court
of the First District considered a clause in an insur-
ance contract as follows: ''Whenever any member
* * * shall, through external, violent and accidental
means, receive bodily injuries which shall * * *
independently of all other causes result in the death
of said member,'' etc., and held on the authority of
Illinois Commercial Men's Ass'n v. Parks, 103 C. C.
A. 286, 179 Fed. 794, that the burden of proof is on
the beneficiary under the policy, not only to establish
that the injury from which death ensued was acci-
dental, but ''that such accidental injury was the sole
cause of death, *independently of any pre-existing dis-
ease or bodily infirmity, as contributory cause
thereof.*'' The first three of these Illinois cases are
authority for a rule that death occurring from disease
caused by an injury is to be considered as caused only
by the injury and the last case for a rule that if the
disease causing or contributing to death is a pre-exist-
ing disease, the plaintiff cannot recover.

Counsel for appellee refers us to Railway Officials'

& Employers' Acc. Ass'n v. Coady, 80 Ill. App. 563, as holding a different rule. In that case there was a conflict of evidence as to what caused death, and it is not clear that the reasoning of the court was not on the assumption that the accident caused the death independent of the bodily infirmity. The question of pre-existing disease was briefly considered without reviewing the authorities, and we do not think the court intended to say that a death caused by an accident, because only of a pre-existing disease co-operating with the accident, is to be held to be caused only by the accidental injury.

National Masonic Acc. Ass'n of Des Moines v. Shryock, 20 C. C. A. 3, 73 Fed. 774, was decided in 1896 and has been often cited in later cases. The clause referring to cause of death read, "which would independently of all other causes cause his death," followed by the stipulation that the insurance does not cover death resulting wholly, or in part, directly or indirectly, from disease or bodily infirmity. The insured suffered an injury from an accident that would not have been sufficient to produce death if his heart had not been weakened by disease, but because his heart was weakened by disease, there was evidence tending to show that the accident caused his death. The court said, "If he sustained an accident, but at the time it occurred he was suffering from a pre-existing disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected with the disease or infirmity, but he died because the accident aggravated the effects of the disease, or the disease aggravated the effect of the accident, the express contract was that the Association should not be liable for the amount of this insurance. The death in such a case would not be the result of the accident alone, but it would be caused partly by the disease and partly by the accident, and the contract exempted the Association from liability therefor."

The court treats these propositions as settled law and cites many authorities in support of them.

Penn v. Standard Life & Accidental Ins. Co., 158 N. C. 29, was decided by the Supreme Court of North Carolina in December, 1911, and again considered on petition for rehearing in November, 1912. (76 S. E. Rep. 262.) It was an action on an accident policy which insured against "the irrecoverable and entire loss of one eye * * * effected directly and independently of all other causes, through external, accidental and violent means." The theory of fact upon which the court discussed the law was that the insured had a cataract and while in that condition received an injury to his eye by falling from a car that, combining with the diseased condition, resulted in loss of sight. The trial court charged the jury that if they found "that the plaintiff fell from the car and was thereby injured and that this injury was soon thereafter followed by loss of sight," and further found "that the condition of the plaintiff's eye at that time was such that independent of the injury, he would ultimately have lost his sight, and that this injury, falling from the car, merely hastened the loss of his sight, in that event you will not find that the injury was caused directly and independently of all other causes through external, accidental, and violent means. The court, disregarding the clause of the instruction "that he would ultimately have lost his sight," discussed the law and reviewed the authorities in cases where the death or injury was the combined result of accident and pre-existing disease, reaching the conclusion that under the terms of the policy there could be no recovery if the loss of sight so resulted. The court quotes with approval from Carr v. Pacific Mut. Life Ins. Co., 100 Mo. App. 602, that the question of "proximate and immediate cause is not raised under the conditions of a policy which in terms excludes disease or bodily infirmity, and which could have no more force than the general provision, 'independent of all

other causes.'" Cites Commercial Travelers' Mut. Acc. Ass'n of America v. Fulton, 24 C. C. A. 654, 79 Fed. 423, and says, "If the jury had found that the injury was caused by the sum of.two causes, that is, that the accident and the pre-existing cataract and diseased condition of the eye were together responsible for the subsequent blindness, the plaintiff could not have recovered, as the injury must have resulted from the accident, independent of all other causes." Cites White v. Standard Life & Accident Ins. Co., 95 Minn. 77, and approves its holding that, "If an injury and an existing bodily disease or infirmity concur and co-operate to that end, no liability exists," but says, "If, however, the injury be the cause of the infirmity or disease—if the disease results and springs from the injury—the company is liable, though both co-operate in causing death;" also in cases where the insured is afflicted at the time of the accident with some bodily disease, if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability exists. Quotes from Ward v. Aetna Life Ins. Co., 85 Neb. 471, "Plaintiff was not entitled to recover if death was caused by the sum of these two causes." Again, illustrating from New Amsterdam Casualty Co. v. Shields, 85 C. C. A. 122, 155 Fed. 54, where it was conceded that appendicitis caused the death of insured and the question was whether a fall, "acting independently of any other cause, produced this disease." And it was held that if there was a susceptibility to have appendicitis, in case a proper exciting cause should arise and the fall prove to be such exciting cause, the case would be one for recovery. But if there was not merely a susceptibility, but the actual disease itself existed, liable to be rendered active and virulent by an injury, the active disease which resulted in death, would not be regarded as the result of the fall alone, but as the joint result of the fall and the latent disease.

The court in the Penn case, *supra,* from which we

have been quoting formulates three rules based on the authorities very fully and carefully reviewed:

(1) "When an accident caused a diseased condition, which together with the accident resulted in the injury or death complained of, the accident alone is to be considered the cause of the injury or death."

(2) "When at the time of the accident the insured was suffering from some disease, but the disease had no causal connection with the injury or death resulting from the accident, the accident is to be considered as the sole cause."

(3) "When at the time of the accident there was an existing disease, which, co-operating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause, or as the cause independent of all other causes."

The petitioner for rehearing urged upon the court the case of Fetter v. Fidelity & Casualty Co., 174 Mo. 256, which case is by appellee here much relied upon. The court reviewed the case and noted that in the Fetter case, *supra*, there was a question of fact whether the disease (cancer of the kidney) that co-operated with the accidental injury to the kidney to produce death was or was not caused by the injury, which question might be regarded as answered in the affirmative by the verdict of the jury, and the plaintiff entitled to recover under Rule 1 as there stated, and the court's discussion of proximate cause regarded as not necessary to the decision of the case, and that the court manifested a distrust of its own reasoning in that part of its discussion by recurring to the fact that there was a fair question whether the accident caused the disease, and the jury might be sustained in finding that it did. In the Penn case, *supra*, the instruction reviewed stated the law applicable to a case where the contributing disease (cataract) would, without the accident, have caused the loss of the eye, and does not literally cover the question here, because in this case

under the evidence, the abscess alone might not have caused the death of insured. But we see no difference between death from the contributing causes or injury and a necessarily fatal abscess, and death caused by injury and an abscess not alone necessarily fatal. In our case neither the abscess nor the injury was necessarily fatal. The injury, in the absence of the abscess, would not have caused death. The abscess in the absence of the injury was perhaps fatal, perhaps not. The court in the Penn case, *supra,* on the petition for rehearing noted this point and said, "It should be understood that in case of an accident resulting in injury or death, if there was an existing disease having also a causal connection therewith, it is not necessary that the disease itself should have been one which would ultimately have proved fatal, or that it should be of itself sufficient to have caused the injury or death. Under the rule that, where the injury or death has been caused by the sum of two causes, it is sufficient to prevent a recovery on the policy, if any ordinary disease, not itself necessarily fatal, should contribute with the accident to cause the death; that is, if without the presence of the disease, the accident itself would not have been sufficient to have caused the injury or the death. And so in this case it would have been sufficient to have shown a diseased condition of the eye, which, together with the alleged accident, resulted in blindness. It is not necessary in such a case to show that the disease of the eye was such that it would ultimately have resulted in blindness."

Appellee relied much upon the case of Continental Casualty Co. v. Lloyd, 165 Ind. 52. The case was decided in 1905 and presents questions very similar to those under consideration here. There was a rupture of an artery caused by the presence of a pre-existing tumor. It was urged that the death of insured was caused partly by accident and partly by diseased and weakened condition of the artery, and as insurer's liability was limited to "Such injuries as shall solely

and independently of all other causes, necessarily result in death," that there could be no recovery. The court seems to have assumed that under that clause the injury was as to the efficient, dominant, proximate cause of death—that is that "sole cause of death" and "efficient, dominant, proximate cause of death" are phrases with the same meaning. Several authorities are cited by the court to sustain that position. On examination of them it will be found that in a part of the cases the words "proximate cause" were used in the policy, leaving no question as to the relative meaning of the two phrases. It was held in Carr v. Pacific Mut. Life Ins. Co., 100 Mo. App. 602, that there is no question of proximate and immediate cause arising in consideration of the phrase "only cause," or its equivalent. The case of Commercial Travelers' Mut. Acc. Ass'n of America v. Fulton, 24 C. C. A. 654, 79 Fed. 423, also holds that the question of proximate cause is not involved where the question of only cause is under consideration and reviews some of the authorities cited in the Lloyd case, *supra,* sustaining its postion, and as we have seen, the Penn case, *supra,* concurred in that view. In the Lloyd case the conclusion was reached that the insurer was liable and the decision is not reconcilable with that of the Penn case and the other cases there cited and followed, but we believe the great weight of authority supports the conclusions reached in the Penn case, and while the direct question here involved has not been settled by our Supreme Court, that it has in its reasoning in the case of Central Accident Ins. Co. v. Rembe, *supra,* indicated an accord with the views expressed in the Penn case. The following authorities support this construction of the contract: Stanton v. Travelers' Ins. Co. (1910) 83 Conn. 708; Thomas v. Fidelity & Casualty Co. of New York (1907) 106 Md. 299; Ward v. Aetna Life Ins. Co., 85 Neb. 471; New Amsterdam Casualty Co. v. Shields, 85 C. C. A. 122, 155 Fed. 54; Cary v. Preferred Accident Ins. Co. of New York, 127 Wis. 67, 5 L. R. A.

(N. S.) 926, 115 Am. St. Rep. 997, 7 Ann. Cas. 484; National Masonic Acc. Ass'n of Des Moines v. Shryock, 20 C. C. A. 3, 73 Fed. 774; Commercial Travelers' Mut. Acc. Ass'n of America v. Fulton, 24 C. C. A. 654, 79 Fed. 423; White v. Standard Life & Acc. Ins. Co., 95 Minn. 77, 5 Ann. Cas. 83; Binder v. National Masonic Acc. Ass'n, 127 Iowa 25, 35 and 1 Cyc. 263, and note 64. In the late case of Illinois Commercial Men's Ass'n v. Parks, 103 C. C. A. 286, 179 Fed. 794, many of the authorities are reviewed.

It is suggested that such construction may sometimes work hardship, but it may well be answered in the language of the court in Carr v. Pacific Mut. Life Ins. Co., *supra*, "What are the courts to do in such cases? We can only construe the contract as we find it. The parties had a right to so contract, as there is no law prohibiting such, and it does not appear to be *ultra vires*." And it may be added that rules 1 and 2 stated in the Penn case, *supra*, fairly protect the insured. It is necessary that the rights of both the insured and insurer be fixed and based on some recognized rules of law. Cases can be imagined when rule 3 would seem harsh and offensive, but it is quite as easy to imagine cases where, to permit a recovery because of a slight accident and great bodily infirmity combining to cause death, would be absurd. There are few general rules that do not provoke protest in extreme cases.

Our conclusion is that the plaintiff failed to prove that the death of the insured was caused, as provided in the policy, and must therefore fail in her suit. It is, therefore, unnecessary to consider or decide other questions of errors presented.

The judgment of the court below is reversed and as the whole case is now before us and evidently cannot be changed by another trial, we therefore reverse without remanding.

*Reversed with finding of facts.*

Finding of facts.   We find that the death of Alonzo L. Crandall was not caused by receiving personal bodily injury which directly and independent of all other causes, through external, violent and purely accidental means resulted in his death, necessarily and solely from such injury.