The evidence tended to show that the plaintiff fell over a hedge and sustained her injuries. It was proper to submit the question to the jury whether or not her fall and resulting injuries were due to contributory negligence on her part.

There is no prejudicial error in the record, and we are of the opinion that substantial justice has been done as between the parties.

*Judgment affirmed.*

Richards and Young, JJ., concur.

---

United States Casualty Co. *v.* Thrush.

*Insurance—Doubtful and ambiguous terms construed favorably to insured or beneficiary—Standard accident policy—Injury caused or contributed to by sickness or disease not covered—General object and purpose of insurance not thwarted by construction—Death from gangrene, caused by stubbing toe, attributed to accident—Recovery not precluded because assured had arteriosclerosis—Evidence—Declaration of assured immediately after accident, admissible.*

1. Doubtful or ambiguous terms in an insurance policy should be construed favorably to the insured or beneficiary.
2. An accident insurance policy, providing for the payment of stipulated sums for accidental injury or death of the assured, resulting "directly and independently of any and all other causes from bodily injury effected solely by external violence and accidental means," and also providing that such policy does not cover "any accidental bodily injury caused or contributed to directly or indirectly by sickness or disease," should not be so strictly construed as to thwart the general object and purpose of the insurance.

3. Where the assured during the continuance of the policy stubbed his toe on the riser under the steps of the stairway leading to his office, and gangrene resulted, causing the assured's death, such death will be attributed to the accident.

4. The fact that the assured had arteriosclerosis, and that such sclerosis was favorable to the development of gangrene, does not prevent recovery by the beneficiary where such sclerosis was a probable disease incident to the age of the assured at the time the policy was issued or renewed.

5. A declaration made by the assured immediately after the accident as to the accident is competent evidence, and its admission does not constitute prejudicial error, especially where the accident is shown by other evidence.

(Decided March 20, 1926.)

ERROR: Court of Appeals for Franklin county.

Messrs. *Watson, Davis & Joseph,* for plaintiff in error.

Messrs. *Wilson & Rector,* for defendant in error.

ALLREAD, J. Pauline C. Thrush brought suit upon an accident insurance policy issued by the United States Casualty Company. George W. Thrush, her husband, was the assured, and the plaintiff was beneficiary therein. The policy was issued October 10, 1921, and renewed annually thereafter. By the terms of the policy, the company assumed liability for injury or death of the assured resulting "directly and independently of any and all other causes, from bodily injury effected solely by external violence and accidental means." The policy also provided that it does not cover "any accidental bodily injury caused

or contributed to directly or indirectly by sickness or disease.''

The plaintiff below recovered a verdict and judgment for the amount of the policy, and the insurance company prosecutes error. It is claimed that the trial court erred in overruling a motion of the defendant below to require an election upon the alternative averment ''that as a result of said injury, or from blood poison resulting directly therefrom.''

This was not error, especially · in view of the subsequent withdrawal of the averment as to blood poison. A claim of error is based upon the admission of the testimony of Miss Bierly concerning the statement of Thrush, the assured, as to his injury, immediately after the accident. This evidence was admitted and then withdrawn upon the motion of plaintiff. The trial court, however, in the course of the trial, remarked that the evidence was competent.

We are of opinion that there was no prejudicial error, for the reason that the testimony was competent. The declaration testified to by Mamie Bierly was made at or so near the time of the accident as to be within the range of the *res gestae*. In any event there was no prejudicial error because there was other evidence of a circumstantial nature tending to prove the accident. *Rheinheimer* v. *Ætna Life Ins. Co.*, 77 Ohio St., 360, 83 N. E., 491, 15 L. R. A., (N. S.), 245.

The most important question is whether the accident and death of Thrush were covered by the policy. Thrush, the assured, prior to the accident was in apparent good health. He was 63 years

old, and a very active man. His neighbors, business friends, and acquaintances so testify. A recent photograph is offered which fully sustains this testimony. June 16, 1924, in going up a stairway from his son's office in the Hartman building to his own in the same building, he stubbed his toe. Thrush's shoe was dented. The shoe was offered in evidence. Thrush complained almost immediately of pain, and limped. He went home early on the day of the injury. Inflammation in the injured toe ensued, and the pain increased. A physician was called and subsequently attended him. Gangrene set in, and eight days after the accident the limb was amputated. The gangrene reappeared, and Thrush died July 12, 1924.

About two weeks after the death of Thrush the body was disinterred, and an autopsy was held. Dr. Shook, who had treated Thrush, Dr. Coons, and Dr. Brundage were present and participated. They all testified that the autopsy disclosed the presence of arteriosclerosis. The physicians differed as to the extent of the ailment, but the medical witnesses agree that Thrush at the time of his death, and at the time of the accident, was afflicted with arteriosclerosis. There is a conflict between the testimony of Dr. Shook and Drs. Coons and Brundage, both as to the extent of the sclerosis and as to the question whether Thrush's accident caused his death. The case was submitted to the jury upon the questions of fact, and the verdict implies that the jury must have accepted the testimony and evidence favorable to the plaintiff's claim.

Dr. Shook testified that in his opinion the acci-

dent caused the gangrene, and therefore was the real cause of Thrush's death. This testimony is supported by other testimony, tending to show that Thrush at the time of the accident was apparently healthy. Dr. Shook had the advantage of an intimate knowledge of Thrush's physical condition during life, particularly after the accident, by reason of his personal and professional treatment.

While it is agreed by all the medical witnesses that arteriosclerosis existed in Thrush at the time of his death, and at the time of the accident, yet it is not an undisputed fact that sclerosis to an extent unusual in a man of Thrush's age existed at the time of the accident. All the medical witnesses agree that a certain amount of sclerosis is usually found in persons of Thrush's age. Dr. Coons states that Thrush, with the sclerosis as found at the post mortem, might still have lived for a period of 10 years. There would therefore be reasonable foundation for a finding by the jury that the accident was the real cause of Thrush's death.

The policy sued on is a standard policy. Many cases have been decided in the federal and state courts involving questions similar to those under consideration here. The cases are in direct conflict; some courts, in similar cases, holding that the disease is a contributing cause, and others holding that the accident is the exclusive cause. It would be a waste of time and energy to attempt to classify or analyze these cases. It is, in our judgment, more profitable to decide the case upon principle, and to ascertain and establish a sound

and reasonable rule of construction, in view of the facts disclosed by the evidence. A brief reference to the Ohio cases may throw some light upon the fundamental principles applying in the construction of insurance policies.

The case of *Mumaw* v. *Western & Southern Life Ins. Co.,* 97 Ohio St., 1, 119 N. E., 132, holds: "Policies of insurance which are prepared by the insurance company and which are reasonably open to different interpretations will be considered most favorably to the insured. Courts will have in mind the relation of the parties to each other. They will give the language of the contract the meaning on which the minds of the parties may be said to have met and which will effectuate their object in entering into it."

The case of *Rheinheimer* v. *Ætna Life Ins. Co.,* 77 Ohio St., 360, 83 N. E., 491, 15 L. R. A., (N. S.), 245, adopts and applies the doctrine of *causa causans.* It was there held that blood poisoning could not be considered as a disease where it grew out of and originated from the accident itself. Notwithstanding the development of blood poisoning, in the *Rheinheimer case* the original cause was still to be considered as the immediate cause of death. While the *Rheinheimer case* may be distinguished in the fact that neither blood poisoning nor any other disease existed at the time of the accident, yet the broad principle of interpretation, as expressed by the doctrine of *causa causans,* was applied.

The court must consider the circumstances surrounding the issuing of the policy in question as a key to the reasonable construction of the terms

and conditions. The policy in this case was originally issued to Thrush when he was 60 years of age, and continued in force up to the time of the accident, when he was 63 years of age. We think it is fair to assume, from the testimony in the case as well as from judicial knowledge, that a certain amount of sclerosis is usually found in a person of 60 years of age. To hold that the insurance company, by the issue of its policy, intended to adopt the view that the policy would not be valid where natural diseases, especially of old age, make serious results more probable from accidents, would be an unfair and unreasonable construction. We have a right to assume, in fact we do not doubt, that the insurance company acted in good faith in issuing Thrush's policy. The company intended a reasonable scope of insurance, and this can be accomplished by holding the company liable for accidents, which, operating upon the physical system according to the natural and usual conditions of age, produce serious illness or death. The sclerosis was not the cause of death. The accident caused the gangrene, and the gangrene caused death; therefore the accident was the *causa causans*. Giving the policy a reasonable interpretation in favor of the assured, the jury had a right to find that the accident was the sole cause of the death.

Finding no prejudicial error, the judgment below will be affirmed.

*Judgment affirmed.*

FERNEDING and KUNKLE, JJ., concur.

### ON REHEARING.

ALLREAD, J. We have considered the application for rehearing and the argument of counsel in support thereof. The learned counsel presenting the application for rehearing are to be commended for their zeal in behalf of the cause represented. This court freely concedes that the attitude of counsel is within their rights. We are more interested in the questions of fact than in the questions of law, for the reason that questions of fact, depending upon the evidence, are rarely reviewed in a higher court, and may therefore be considered as resting finally with the decision of the Court of Appeals.

Counsel for the plaintiff in error insist that there was no evidence that the decedent went up the stairways, as found by this court, that there was no dent in the shoe, and that there was no legitimate evidence of an accident. As to the stairway, counsel have evidently overlooked the undisputed evidence. Glen Thrush, the son, testified that his father was in the habit of going up and down the stairways between their respective offices. This witness saw his father just before the alleged accident. He accompanied him out into the hall, and testified as follows (page 49):

"Q. Now did you see him, where he went or how he went from that time on? A. Turned round past the corner and up the steps."

The learned counsel for the plaintiff in error did not even cross-examine the witness on this subject, but allowed this testimony to stand unqualified and undisputed.

If, as the learned counsel now contend, he might

have gone to an elevator and not the stairway, it
might be proper to inquire whether the elevator
was around the corner or was so located as to make
it probable that Thrush, Sr., took an elevator and
not the stairway. It certainly will not be con-
tended that eyewitnesses are necessary to estab-
lish a fact, and that circumstantial evidence may
not be relied upon. We think that the evidence of
Glen Thrush is sufficient to sustain a legitimate
inference that the decedent passed up the stair-
way. The jury so thought, the trial judge so found,
and this court approves their views. As to the dent
in the shoe, the evidence is equally strong. There
was evidence to show that the dent in the shoe
was noticed immediately after the accident, and
the shoe itself was produced on the trial. The
real question, however, is as to the accident. The
circumstantial evidence tends to prove that there
was an accident as claimed by the plaintiff below.
The dent in the shoe, and the limping and complaint
of Thrush, immediately after reaching his office,
and the testimony of Dr. Shook (pages 64 and 67,
record), are competent, and, with the other evi-
dence, sufficient. In fact, the evidence is in our
judgment reasonably clear that the decedent re-
ceived the accident to his toe as claimed. The jury
unanimously found for the plaintiff, and the ver-
dict was approved by the trial court.

The most serious question is whether this injury
was the sole cause of the decedent's death. This
is a debatable question. So far as the diabetes
proposition is concerned, there was a conflict of
evidence, Dr. Shook testifying that the condition
in this respect found in the *post mortem* might

have been caused, or at least greatly intensified, by the sickness and suffering of the decedent prior to his death (see page 75, record), so that it was a question of fact whether the decedent was suffering from diabetes to any considerable extent at the time of the accident. The sclerosis of the arteries was discovered in the post mortem. This took place two weeks after the death of the insured. The doctors differ somewhat as to the amount of sclerosis found at the post mortem. The learned counsel for the plaintiff in error criticize the opinion of this court in its statement as to the amount of sclerosis proven to have existed at the time of the accident. In so doing, the learned counsel have shifted to the other foot on the doctrine of presumptions, or the influence of circumstantial evidence. We will, however, leave out the opinion of the court on this proposition and go back to the evidence. Dr. Coons testified that, notwithstanding the sclerosis, the insured might have lived for 10 years. Counsel criticize the court for accepting the opinion of Dr. Coons upon this feature. Nevertheless, Dr. Coons' testimony was largely matter of opinion, and properly so. Consequently his opinion in this respect is as valuable as in any other respect. On page 67 Dr. Shook testified in relation to the gangrenous condition, that such condition might be the natural result of the accident. Dr. Shook also testified that in his opinion there was nothing in Thrush's condition of the arteries that would prevent his living a number of years. This testimony is found on page 78 of the record. Taking the testimony of both Dr. Shook and Dr. Coons, it is a fair inference that the arterial con-

dition was not such as to have been the cause, or even a contributing cause, of the insured's death at the time the death actually occurred.

Upon the question of the construction of the insurance contract as to the sole and exclusive cause, and as to whether a disease of the kind shown by the record could as a matter of law or as a matter of fact be held to be a contributing cause, we rest upon the original opinion of this court.

Counsel criticize this court for resting its decision upon principle rather than upon decided cases from other jurisdictions. We are entirely content with the statement made in the original opinion, that, where decisions of other jurisdictions are in conflict, we may go back to original principles and accept the line of decisions which in our judgment appears to be sound and supported by the better reasoning. Blackstone tells us that "nothing is law that is not reason." We think that principle is sound and applies to the situation here. We are therefore of opinion that the application for rehearing should be denied.

FERNEDING and KUNKLE, JJ., concur.