## O'BRIEN v. MASSACHUSETTS BONDING & INSURANCE CO.

### No. 9153.

Circuit Court of Appeals, Eighth Circuit.
Feb. 23, 1933.

Randolph Laughlin, of St. Louis, Mo., for appellant.

Robert A. Holland, Jr., of St. Louis, Mo. (Forrest C. Donnell, Jacob M. Lashly, and Holland, Lashly & Donnell, all of St. Louis, Mo., on the brief), for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Patrick J. O'Brien had a policy of accident insurance in the appellee company insuring him—and his beneficiary, appellant herein, in case of accidental death—against "the effects resulting directly and exclusively of all other causes from bodily injury sustained solely through external, violent and accidental means (excluding suicide, sane or insane)." The principal sum, in case of death, was $5,000.

March 19, 1925, insured, an inspector of transportation for the Wabash Railroad, din-

ed with the vice president and general manager of the railroad in the private car of the latter at Moberly, Mo. Two or three hours later insured·became ill, complaining of pain in his stomach. He returned next day to his home in St. Louis, where he became so ill that a physician was summoned. Dr. Kane, physician in charge, testified that he found him vomiting, that he had abdominal distention, and was complaining of intense pain and cramps. The case was diagnosed as acute gastrointestinal infection. Treatment at home continued until April 11, 1925, when he was removed to a hospital; there an operation was performed, and a very large liver abscess was found containing a large amount of pus. The postoperative diagnosis was abscess of the liver. A second operation was performed April 22, 1925, in which an abscess cavity was found between the fascia and the peritoneum. · It contained colon bacillus pus. Dr. Kane says: "After the second operation Mr. O'Brien continued the course of an individual who had a general systemic infection, a general toxemia." He had, in course, an acute nephritis, an acute inflammation of the kidneys, and septic-miocarditis. As his disease progressed his heart muscle degenerated. He died April 29, 1925. Dr. Kane further testified that:

"The toxins that were developed by the micro-organisms were what was making an attack on all these vital organs. It is not a microbe·infection by one particular germ all the time. It is a mixed infection. We get a mixed infection with a streptococcus and staphylococcus and colon bacillus. In this case the one that was demonstrated was the staphylococcus which was found after the original operation. That was found in the smear, the liver pus.

"I know that staphylococcus was the pathogenic organism that could produce these various results that I have described."

Appellant brought suit to recover upon the clause of the accident policy to which reference has been made, alleging, in her third amended petition: "That on the 19th day of March, 1925, said Patrick J. O'Brien ate certain food, believing the same to be pure, nourishing, and wholesome, and without any intention to partake of poison, tainted, or unwholesome food, but said food, unknown to him, was tainted, and contained a deleterious substance or poisonous organism, to-wit, a pathogenic organism technically called staphylococcus bacteria, commonly known as ptomaine, or food poisoning, which testified as follows:

was hidden from him, and which, operating upon his system, caused death."

At the close of all the evidence the court, on motion, directed a verdict for appellee. As said by the trial court, the cause of action alleged by the plaintiff was that his death was caused by taking in on food, the food being merely a medium of transportation, and not being within itself inherently poisonous, a pathogenic germ call staphylococcus bacterium. This theory of the case is thus succinctly expressed by counsel for appellant at the conclusion of the trial: "I agree with your Honor, that the evidence in this case does show that this deleterious substance, or organism, was taken in with the food, as a medium of transportation merely, and not as a virtual poison itself, and that raises the cold question of law, whether or not a deleterious substance taken in that way is an accident, within the meaning of the policy. That is the sole question that I would like to present to the higher court."

Dr. Kane, attendant physician and chief medical witness for plaintiff, says:

"Staphylococcus is a form of bacteria. It is one of the most prevalent. If you took a culture from my hands or your hands right now, you would be apt to find staphylococci. If you took a culture of any ordinary food, you would be apt to find staphylococci on the surface of it. If you put your finger in your mouth you might be putting something in there that in all probability has staphylococcus on it, unless you had just scrubbed it.

"These bacteria are found in fish, in milk, in raw vegetables and in butter. * * *

"In the works on poisoned food, a food that merely has staphylococcus on it has never been classified as a poisoned food before it is taken. * * *

"When staphylococci get on food and lodge there, they do not create any poisonous substance in their action on food, not in the dead food. Other bacteria do—Putrefactive bacteria do. * * *

"The scientific portion of the medical profession is attempting to have the word 'ptomaine' discarded from medical literature, because recent investigation has proven that there is no such thing. * * *

"These staphylococcus germs can enter the system in other ways than on food, by anything that goes·into the mouth, or into the saliva or ·secretions."

Dr. Albert E. Taussig, for defendant, testified as follows:

"This bacterium known as staphylococcus is everywhere. It is in the dust. It is always in and on our skins. It is always present in the throat. It is practically everywhere. If you should take some food that had on it some staphylococci bacteria, you would be taking what they call normal food. If a person took some food that had a quantity or staphylococci bacteria on it and ate it, and it went down into his stomach and through his intestines it could do him harm only if there were an open wound somewhere on the way. If you rub staphylococcus on your skin, nothing happens; if you happen to have a particularly lively and virulent germ and rub it into a wound, you might get blood poison. If there is a virulent germ on the food, and you swallow it and it happens to be lodged into a wound on the way, you might get an infection, although I confess I have never heard of such a thing happening. If we assume that there are no diseased conditions or lesions or wounds in the stomach or intestines, if you take food with these staphylococci bacteria, we have no reason to suppose that such food would do a person any harm. I have never heard of such a thing. If taken in on food, in order to do any harm, there would have to be a pre-existing lesion or disease somewhere along the track that the food travels. * * *

"The germ, staphylococcus, when ingested into the intestinal tract, would not produce disease from mere contact with mucous membrane of that tract, but there must exist some sort of lesion on which it may get a foothold. * * *

"It would not be possible for this germ to produce trouble in a gastro-intestinal tract that had no lesion. By lesion is meant a pathological condition. It would not affect a normal mucous membrane, such as that in the gastro-intestinal tract."

Dr. Ralph L. Thompson, also for defendant, says:

"Staphylococcus is one of the most prevalent bacteria. It is apt to be on the surface of anybody's hands and body, and on the surface of any and all food, so that a food that has staphylococcus bacteria on it would be a normal food. If the average person, if you took a test of their sputum, it would ordinarily disclose the presence of staphylococcus. Staphylococcus passing through the gastro-intestinal tract of a normal man, who is perfectly healthy, and who has no ulcer or lesion, would have no effect. For such bacteria to have any effect, it would be necessary to have a solution of continuity of the mucous membrane, a wound, a break in the surface of the mucous membrane. That might be an ulcer or any other sort of break in the continuity, and that would have to be an abnormal condition, what you would call a diseased condition. If no such diseased condition existed, the bacteria of this kind would go right through the body without doing any harm, and stay there without doing harm. If you take a man in normal health, without any of these abnormal conditions, if he should eat some food covered with staphylococci bacteria, that, in my judgment, would not do him any harm.

"I have never heard of a food that has no defect other than that it has on it staphylococci bacteria, being designated in science as a poisonous food."

It would seem, therefore, that the medical testimony was in substantial accord, to the effect that the staphylococcus germ is present upon all food at all times, and that its presence there has no effect in converting that food into an active poison, such as has been uniformly recognized by the courts as constituting an external, violent, and accidental cause, where death from eating results. Putrefactive bacteria do have such an effect. We are asked then to hold that such an involuntary and unconscious introduction into the stomach of a microscopic germ, transported by food in itself pure and wholesome, that germ being incapable of harm to the human system unless it contacts with some lesion, injury, or disease already lurking there, constitutes an external, violent, and accidental means of death within the terms of a policy, providing that such effect must result from bodily injury "exclusively of all other causes." It appears from the testimony that this specific germ is found upon all food, and will not affect a normal mucous membrane, such as that in the gastro-intestinal tract.

To ascribe the death of the insured to an accident within the meaning of this policy would be to ignore the contract provision that the bodily injury must be sustained solely through accidental means directly and exclusively of all other causes. Appellant insists that this is an Illinois contract, and that, by the law of Illinois as declared by its courts, death caused by germs unintentionally ingested with food or drink is within the meaning of a policy insuring against death by external, violent, and accidental means. Assuming, without deciding, that this is an Illinois contract, and that the courts of that state have decided as coun-

sel for appellant claims, it does not follow that this court is bound by such decisions. We have not before us any statute which undertakes to construe the language of the policy in suit, nor is any question of construction of that phraseology presented. On the contrary, the question involved is whether the legal effect of the facts in evidence brings the claim of appellant within the terms of the policy. Such a question is one of general jurisprudence; and, in its consideration, federal courts will exercise their own independent judgment uncontrolled by state decisions. Bush v. Bremner (C. C. A. 8) 36 F.(2d) 189. The Supreme Court in Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U. S. 518, 530, 48 S. Ct. 404, 407, 72 L. Ed. 681, 57 A. L. R. 426, states the rule thus: "As respects the rule of decision to be followed by federal courts, distinction has always been made between statutes of a state and the decisions of its courts on questions of general law. The applicable rule sustained by many decisions of this court is that, in determining questions of general law, the federal courts, while inclining to follow the decisions of the courts of the state in which the controversy arises, are free to exercise their own independent judgment."

It may be conceded that death resulting from the inadvertent taking of a true poison into the system is a death through external, violent, and accidental means, all other causes being excluded; but such cases are to be distinguished from those in which "pathogenic bacteria, taken into the system through the nose, mouth, or other normal channels of entry" cause "bodily disease" as distinguished from "bodily injury." This distinction is preserved in the language of the policy, and must be observed; otherwise, as said by the trial court, "the policy in question ceases to be a policy against death by accidental means, but becomes a policy of insurance against death in any form, that is, the ordinary life insurance policy." In the one case, an infection results from trauma, a bodily injury within the terms of the policy; in the other the infection is caused by the pathogenic germ, whose absorption into the system is incidental to a normal bodily process, and death from such a process is not covered by the policy in suit. Chase v. Business Men's Assurance Co. (C. C. A. 10) 51 F.(2d) 34, 36; Lincoln National Life Ins. Co. v. Erickson (C. C. A. 8) 42 F. (2d) 997.

In the instant case, according to the overwhelming weight of the testimony, the introduction of the staphylococcus germ into the stomach of the insured would have been harmless, in the absence of a lesion, or diseased condition already existing. Indeed there is no proof that the germ, which caused the infection and resulting death, was ingested with the food eaten on the evening of March 19th, or at any other time. As stated by the medical experts, this germ is practically everywhere. It may be introduced into the system through various channels. In fact it is lurking there at all times. The burden is upon the beneficiary suing to show that death resulted from the bodily injury claimed. Lincoln Nat. Life Ins. Co. v. Erickson, supra. In our judgment she has failed successfully to carry this burden.

An additional assignment charges that the court erred in "excluding the opinion testimony of the attending physicians as to what caused the physical condition and subsequent death." To this contention it may be replied (a) that the alleged error is not properly presented as required by rule 11 of this court; (b) that, as framed, the question invades the province of the jury. No error therefore can be predicated upon the exclusion of this testimony.

It follows from what has been said that the judgment should be affirmed, and it is so ordered.