**6**

## METROPOLITAN LIFE INS. CO. v. SIEBERT et al.

### No. 9831.

Circuit Court of Appeals, Eighth Circuit.

July 18, 1934.

———◆———

Allen L. Oliver, of Cape Girardeau, Mo. (R. B. Oliver, R. B. Oliver, Jr., and Elmer A. Strom, all of Cape Girardeau, Mo., and Leroy A. Lincoln, of New York City, on the brief), for appellant.

S. P. Dalton, of Cape Girardeau, Mo. (A. M. Spradling, of Cape Girardeau, Mo., on the brief), for appellees.

Before GARDNER and WOODROUGH, Circuit Judges, and MARTINEAU, District Judge.

MARTINEAU, District Judge.

Appellees as plaintiffs sued appellant insurance company to recover as beneficiaries under an accident insurance policy in the usual and customary form, insuring against death by accidental means. They alleged that the insured shot himself while insane.

Defendant admitted that it executed and delivered the policy sued on. As a first defense it pleaded that the insured intentionally shot himself. Then it pleaded as a further defense clause 9 of the policy sued on, the material applicable parts of which are as follows: "This insurance shall not cover suicide * * * while sane or insane; * * * nor shall it cover accident, injury, disability, death or other loss caused wholly or partly by disease or bodily or mental infirmity. * * * All insurance under this policy shall be suspended if the insured * * * shall become blind or insane, in which event the portion of the premium unearned during the period of such suspense shall be refunded."

From a verdict and judgment in favor of plaintiffs this appeal is prosecuted.

The insured was a business man of Cape Girardeau, Mo. On the morning of August 26, 1931, he drove away from his home in an automobile. The following day about 3 o'clock in the afternoon his body was found on a country lane about two and one-half miles from Cape Girardeau. The surrounding circumstances clearly showed that he had shot himself. Both sides introduced much testimony as to his sanity at the time of his death.

■ The simplest and most logical way to decide the issues in this case is to determine what the law of Missouri is in such a case. Missouri has what is known as the Missouri Suicide Statute, which is section 5740, Revised Statutes of Missouri 1929 (Mo. St. Ann. § 5740, p. 4385), and reads as follows: "In all suits upon policies of insurance on life hereafter issued by any company doing busi-

ness in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

Both the federal courts and the Missouri state courts hold that this statute applies to death by one's own hand, even though the person committing the act was insane. They hold that the defense that the insured came to his death by his own hand while insane is avoided though expressly excepted by the policy, and that in accident policies such as the one involved here suicide while insane, being unintentional, is accidental. Knights Templars' & Masons' Life Indemnity Co. v. Jarman, 187 U. S. 197, 200, 23 S. Ct. 108, 47 L. Ed. 139; Brunswick v. Standard Accident Insurance Co., 278 Mo. 154, 166, 213 S. W. 45, 7 A. L. R. 1213.

Disregarding for the present the effect of the last part of clause 9 of the policy, under this state of the law it devolved upon plaintiff to show two things, first, that the insured shot himself, and, next, that when he did so he was insane. About the first there is no dispute. The question as to the insanity of the insured at the time he committed suicide was submitted to the jury and it found in favor of plaintiffs. There was substantial testimony upon which to base this finding. Accepting the finding of the jury that the insured was insane at the time he killed himself as a fact, does the provision of the policy providing that all insurance under it shall be suspended if the insured shall become insane defeat plaintiffs' right to recover?

The policy of insurance is a Missouri contract, made in Missouri, with a Missouri citizen, and is governed by the laws of Missouri, which are a part of the contract itself. The suicide statute above referred to has been held by the Supreme Court of the United States and by the Supreme Court of Missouri to be valid and binding upon insurance companies doing business in Missouri, and that inasmuch as it declares the public policy of that state any provision of a policy in conflict with it or which seeks to avoid its effect in whole or in part is void. In Whitfield v. Ætna Life Insurance Co., 205 U. S. 489, loc. cit. 496, 27 S. Ct. 578, 580, 51 L. Ed. 895, the court said: "We cannot agree with the learned courts below in their interpretation of the statute. The contract between the parties,

evidenced by the policy, is, we think, an evasion of the statute, and tends to defeat the objects for which it was enacted. In clear, emphatic words the statute declares that in all suits on policies of insurance on life it shall be no defense that the insured committed suicide, unless it be shown that he contemplated suicide when applying for the policy. Whatever tends to diminish the plaintiff's cause of action or to defeat recovery in whole or in part amounts in law to a defense. * * * If, notwithstanding the statute, an insurance company may, by contract, bind itself, in case of the suicide of the insured, to pay only one tenth of the principal sum, may it not lawfully contract for exemption as to the whole or only a nominal part thereof, and, if sued, defeat any action in which a recovery is sought for the entire amount insured? In this way the statute could be annulled or made useless for any practical purpose. * * * 'The statute is mandatory and obligatory alike on the insurance company and the assured. Its very object was to prohibit and annul such stipulations in policies, and it cannot be waived or abrogated by any form of contract or by any device whatever.' "

The suspension clause in this policy would be binding if it were not prohibited by the Missouri law. But being prohibited no mere use of words which in effect avoid the law can render this clause binding. It is manifest that one of the purposes of the language in this policy is to defeat a recovery where an insane person commits suicide. This cannot be done. Aufrichtig v. Columbia National Life Insurance Company, 298 Mo. 1, 249 S. W. 912, 914, 915.

The appellant further insists that the death of the insured was caused wholly or in part by disease or bodily or mental infirmities. The record here does not support such a conclusion. Where the disease with which the insured was suffering had no causal connection with the death resulting from the accident, the accident is to be considered the sole cause. "Bodily infirmities or disease do not include insanity." Standard Accident Insurance Co. v. Rossi (C. C. A.) 35 F. (2d) 667, 672, and Accident Insurance Co. v. Crandal, 120 U. S. 527, 533, 7 S. Ct. 685, 30 L. Ed. 740.

Appellant lastly insists that the assessment of $1,000 attorney's fee in favor of plaintiffs on the ground of vexatious delay was clearly against the weight of the evidence. In this we concur. The appellant had a right

in good faith to contest the payment of this claim. The evidence does not show that its refusal to pay was without reasonable cause or excuse. Commercial Casualty Insurance Company v. Fruin-Colnon Cont. Co. (C. C. A.) 32 F.(2d) 425.

It follows therefore that the instructions of the court were correct except as to the attorney's fee. The case will be affirmed upon appellees entering a remittitur for the attorney's fees assessed.