## PREFERRED ACCIDENT INS. CO. OF NEW YORK v. COMBS.
### No. 9942.

Circuit Court of Appeals, Eighth Circuit.
March 14, 1935.

George L. De Lacy, of Omaha, Neb. (J. A. C. Kennedy and Yale C. Holland, both of Omaha, Neb., on the brief), for appellant.

William R. Patrick, of Omaha, Neb. (Seymour L. Smith, of Omaha, Neb., on the brief), for appellee.

Before STONE, Circuit Judge, and JOYCE and BELL, District Judges.

JOYCE, District Judge.

This is an action brought by the beneficiary of an accident policy issued by the appellant company to Claude R. Combs. Judgment was entered for the beneficiary. The insurance company will hereinafter be referred to as the defendant, and the beneficiary, the widow of Combs, as the plaintiff.

The policy was issued to Combs in July, 1915. By its general terms defendant insured Combs "against loss or disability as herein defined, resulting directly, independently, and exclusively of any and all other causes from Bodily Injury effected solely through Accidental Means." Specifically, the policy provided that, "if such bodily injury shall, from the date of the accident, and independently and exclusively of all other causes, * * * be the sole and direct cause" of loss of life, defendant would pay the beneficiary of the policy $5,000. There was still another provision that the insurance under the policy did not cover death, "caused directly or indirectly by disease in any form."

The parties concede the due issuance and effectiveness of the policy at the date of death of the insured, and the making of claims thereunder in due time.

On the afternoon of August 20, 1932, plaintiff and the insured drove out from their home in Omaha to the farm of a tenant, Miss Appelt. While plaintiff and Miss Appelt were conversing in the yard, Combs walked toward the barn and through a gate at the corner thereof and out of their sight

to the rear of the barn. The soil on that side of the barn sloped downward at a considerable angle, and, being clay, was then soft because of a previous rain. When the insured reappeared, after five or ten minutes, he was brushing dust from his clothing. He looked weary and tired. Plaintiff asked him what was the matter. "I slipped and fell" was the answer. The insured got into the automobile where he sat "kind of slumped in the seat," rubbing the back of his head with his left hand quite frequently. After about twenty minutes plaintiff and the insured went home. Combs experienced difficulty in driving and did not seem able to manipulate the accelerator properly. He could not get out of the car alone. He was put to bed immediately, and shortly thereafter lapsed into semiconsciousness. He repeatedly undertook to rub the back of his head with his left hand until his death three days later.

Shortly before the happenings at the Appelt farm, the deceased with members of his family had stopped to have a picnic supper in certain timber on land owned by him and after they had eaten Combs had had a controversy with a tenant named Karschner in regard to a certain chattel mortgage which he wanted the latter to sign. It was not denied that there was a dispute, but the testimony as to whether the deceased became excited and angry was conflicting.

There was evidence that insured was an active, alert, well developed and well nourished man, and that for some months prior to his death appeared to be in good health, although he had paid occasional visits to physicians during that time.

In the medical testimony centers the principal controversy. Dr. Kirk, for the plaintiff, said that he had treated the insured in November, 1931, for high blood pressure; that Combs' blood pressure thereafter was reduced from around 200 to around 140 to 150, the normal pressure for a man his age; that Combs showed marked improvement after the treatment in 1931; that he should live for a number of years, probably ten years, from that time; that when seen on the evening of August 20, 1932, Combs was unconscious and completely paralyzed in his right side; that the post mortem examination performed on his body disclosed a large hemorrhagic area on the left side of the mid portion of the brain and another in the posterior part of the brain; that there were two black and blue areas the size of the tip of a pencil at the back of the head; that

there was a hemorrhage underneath the scalp or skin at these areas; that he believed these conditions were produced by a fall; that he believed the insured died of a brain hemorrhage caused by the application of external force; that "a fall severe enough to cause a hemorrhage in the cerebellar part of the brain, adjacent to the place of the blow, might be sufficient to cause a rupture of a blood vessel anywhere that the vessels are friable, anywhere in the brain." He testified further that the insured had arteriosclerosis or friable arteries; that arteries are friable when calcium is deposited in them and they become hard and easily broken; that the arteries of Combs' brain, heart, liver, and kidneys were sclerotic; that this end was not the common one to persons the age of the insured and afflicted with arteriosclerosis; that a brain in a sclerotic condition is in a pathological condition; that brain hemorrhages generally follow some stress or excitement; that the insured had some blood vessels that only were in the process of becoming hard; that massive hemorrhages may occur in the absence of high blood pressure; that the friable condition of the arteries is the principal factor in producing such hemorrhages; that normal arteries are soft and pliable and expand and contract as blood is pumped through them. That "arteriosclerosis is a common thing in the human family"; that it is "quite common with people in middle life"; that "old age is characterized by hardening of the blood vessels, and arteriosclerosis is a disease of middle and old age"; that "a friable condition of the arteries would render a person, so far as that particular artery is concerned, more susceptible to injury or breakage than if normal." He said further:

"Arteriosclerosis is not a particularly abnormal condition. It is a physiological condition. The technical name of the disease is arteriosclerosis, which describes vessel change that you see very commonly in individuals. * * *

"These changes usually appear with the years and are the natural result of wear and tear, and are common and natural changes. * * *

"It may be a pathological change. It is a normal physiological change. As we grow older our blood vessels normally become subject to the strain and stress of life. It is pathological in the meaning that it produces pathological results. Pathological means an abnormal condition. It means a diseased condition."

Dr. Russum testified for the defendant and made reference to the discovery at the autopsy of the large hemorrhage at the left side of the brain of the insured which he felt was the "immediate cause of death." He spoke also of the two small abrasions at the back of the head. He testified that in the body and the heart he found "the usual changes of arteriosclerosis" or hardening of the arteries; that the arteries of the insured were correctly characterized as friable, which meant weakened or easily broken; that "arteriosclerosis is a pathological condition, a disease"; that Combs suffered from a general arteriosclerosis; that in his opinion Combs died of a spontaneous massive hemorrhage, or one "which comes on without any injury" and without any apparent inciting cause, being due only to the giving way of a weakened artery; that experience "shows that that type of hemorrhage is not due to a blow or trauma"; that Combs' arteriosclerosis was a "moderately advanced disease"; that "arteriosclerosis is a common condition in elderly persons"; that "most people who live to reach middle life, have it in some degree"; that "arteriosclerosis, in and of itself, can very properly be called a disease and is so regarded by the leading medical authorities"; that in his opinion any traumatic injury suffered by Combs came after the hemorrhage which caused his death; that the insured's arteries were not in "the extreme advanced type of sclerosis, as those of a man of eighty would be"; that they were, rather, "moderately advanced."

The contentions of defendant may be summed up as follows: (I) That the evidence of an accidental fall, or of a fall at all, depended largely upon the statement made by the insured on returning to the automobile that he had slipped and fallen, and that such statement by him was improperly admitted over objection; (II) that if there was enough evidence to show a fall it was not sufficiently shown that the fall had been of accidental origin but that it was caused by a small hemorrhage brought on by excitement caused by the controversy with Karschner shortly before; (III) that it was conclusively shown that the death had not resulted exclusively through external and accidental means but that it had been caused in whole or part by a diseased condition of the arteries; (IV) that in any view of the situation the court had improperly charged the jury in telling them that the sclerotic condition "may or may not have contributed to the death of the deceased."

In addition to these four issues it is urged that the court erred in overruling the motion for a new trial, but such character of issue is not open to review in this court.

I. The objection to the introduction of the statement that "I slipped and fell" or "I had a fall" is attacked on the ground that it is hearsay evidence and supported on the basis that it is part of the res gestæ.

In Chesapeake & Ohio Ry. Co. v. Mears (C. C. A. 4) 64 F.(2d) 291, 292, certiorari denied 293 U. S. 557, 55 S. Ct. 69, 79 L. Ed. —, October 8, 1934, the court approved Professor Wigmore's requisites for the admission of such testimony under an exception to the hearsay rule, Wigmore on Evidence (2d Ed.) §§ 1747 to 1750, saying: "To render them [such statements] admissible what is required is: (1) There must be some shock to the feelings sufficient to render the utterance spontaneous and unreflecting; (2) 'the utterance must have been before there has been time to contrive and misrepresent, i. e. while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance'; and (3) it must relate to the circumstance causing the shock to the feelings."

After making an extensive review of the cases, the court said: "While a logical basis is not always given for the decisions, the cases almost uniformly hold that a statement made by an injured person as to the cause of his injury is admissible if the time which has elapsed since the injury is so short that he is still under the influence of the happening and his statement presumptively a spontaneous expression growing out of it and not the result of reason and reflection."

In Travelers' Insurance Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437, declarations of a decedent made upon his reaching his bedroom to the effect that he had just fallen downstairs were admitted. The extent of that decision has been interpreted by this court in National Masonic Acc. Ass'n v. Shryock, 73 F. 774, 779: " * * * These declarations were made within a few moments of the fall, at the place where it occurred, to the first persons the deceased met after the accident, and when he was suffering severely therefrom."

See, also, Travelers' Prot. Ass'n of America v. West (C. C. A. 7) 102 F. 226; Sullivan v. Mutual Life Ins. Co., 96 Mont. 254, 29 P.(2d) 1046, 1049, 1050; Ætna Life Ins. Co. v. Kern-Bauer (C. C. A. 10) 62 F. (2d) 477, 478.

The evidence here is that the deceased was out of sight of his wife only about five minutes; that he returned evidencing by his appearance that something unusual had happened; that he was acting as though brushing dust from his clothes; and upon being then asked what was the matter he made the statement objected to. It seems to us that this statement so closely following whatever had occurred, made to the first person seen, without intervening transactions occurring and while deceased was evidently under the immediate influence of what had occurred, and with no possible reason to falsify, is a sufficient compliance with the requirements of the res gestæ rule, and that the evidence was properly admitted.

II. The second matter urged by defendant is that it was not shown that the fall was accidental in the sense of the policy because, according to its theory, it was caused or might have been caused by a hemorrhage brought on from excitement occasioned by the controversy with Karschner. The evidence is clear that a hemorrhage in one having friable arteries, and deceased had such, might be caused by external force or by excitement. It is the contention of appellant that the controversy with Karschner excited the deceased, causing a hemorrhage which resulted in the fall. The evidence of the plaintiff negatives the existence of excitement. The further evidence of the autopsy shows a hemorrhage at the place where the outside force appeared to have struck the head. The first would make a jury question. While still leaving the matter a question for the jury, the latter evidence almost precludes a finding such as that contended for by defendant. It is very strong physical evidence that the external force caused the hemorrhage rather than that the hemorrhage occurred first and happened to be at the precise point where the external force later was applied. There was, therefore, ample evidence to authorize the submission of that matter to the jury.

In this connection defendant contends that this issue was not properly submitted to the jury. It asked an instruction which not only covered this specific matter, but had the additional and equally important conjunctive statement that, "if you find, aside from the interview with Mr. Karschner, the deceased had a hemorrhage which caused his fall, then in either event your verdict must be for the defendant." This instruction was refused. Had the instruction omitted the just-quoted portion, it would have been error to refuse it unless the same matter was otherwise included in the charge. However, there was no evidence whatsoever of the occurrence of a hemorrhage from any causes except either the fall or the excitement brought on by the Karschner controversy. Since the requested instruction contained this element which was unsupported in the testimony, and since that element was an integral part of the request it was not error to refuse the instruction as requested. The court undertook to charge on the matter of the hemorrhage being the cause of the fall, as to which no exception was taken.

III. The difficult question presented on this appeal arises out of the question whether or not the insured's sclerotic condition as a matter of law deprived plaintiff of a right to recover under the policy in the absence of evidence that Combs suffered an accident which would have caused his death in spite of that condition. It is a question, indeed, with respect to which the decisions of courts have not been uniform. Proximate cause, remote cause, reasonable interpretation, intention of the parties, have been included in the terms that have been considered in treating the subject. This inharmonious state of the authorities has been judicially recognized. Wheeler v. F. & C. Co. of New York, 298 Mo. 619, 251 S. W. 924, 930; Sullivan v. Metropolitan Life Ins. Co., 96 Mont. 254, 29 P.(2d) 1046, 1051; and United States Cas. Co. v. Thrush, 21 Ohio App. 129, 152 N. E. 796.

In National Masonic Acc. Ass'n v. Shryock (C. C. A. 8) 73 F. 774, a policy was issued covering death if it should "result through external, violent, and accidental means alone, which should, independently of all other causes," cause the death. It was also expressly stipulated that the insurance did not cover death "resulting wholly or in part, directly or indirectly, from any of the following causes: * * * Disease or bodily infirmity. * * *" The beneficiary claimed that the insured suffered an accidental fall and died from the results thereof. An autopsy revealed that the insured had long been afflicted with fatty degeneration of the heart and that the heart was diseased. Each of the medical witnesses agreed that the fall indicated by the abrasions upon the body of the insured would not have been sufficient to have produced death if the insured's heart had not weakened by disease. Judge Walter H. Sanborn then enunciated the rules that if the insured was afflicted with a disease or bodily infirm-

ity which caused the death, the insurance company was not liable; that if, at the time of the accident, the insured was "suffering from a pre-existing disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected with the disease or infirmity, but he died because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, the express contract was that the association should not be liable for the amount of this insurance. The death in such a case would not be the result of the accident alone, but it would be caused partly by the disease and partly by the accident. * * *"

In Western Comm. Travelers' Ass'n v. Smith (C. C. A. 8) 85 F. 401, 404, 40 L. R. A. 653, a case which concerned primarily the question whether an injury was accidentally caused, the rules of the Shryock Case were re-emphasized.

Kerns v. Ætna Life Ins. Co. (C. C. A. 8) 291 F. 289, 290. The insured here swallowed a piece of metal. It pierced his esophagus but became incapsulated and harmless. Six months later he slipped, the metal was dislodged, infection set in, and death resulted. Recovery for the initial accident was impossible because of a ninety-day feature of the policy. The court said, however, that that injury had "fallen into the category of a pre-existing disease or bodily infirmity" so far as the policy was concerned. The rules of the Shryock Case were again quoted.

See, also, Brown v. Maryland Casualty Co. (C. C. A. 8) 55 F. (2d) 159; and O'Brien v. Massachusetts B. & I. Co. (C. C. A. 8) 64 F. (2d) 33.

In Ætna Life Ins. Co. v. Kelley (C. C. A. 8); 70 F. (2d) 589, 590, 93 A. L. R. 471, the insured was protected against loss "resulting solely from bodily injuries, effected directly and independently of all other causes, through accidental means" by one policy, and, by another, against loss "resulting directly and independently of all other causes from bodily injuries effected * * * solely through accidental means." The insured slipped or fell from the rear platform of a train in April, 1929. In February, 1931, he suffered cerebral hemorrhages and death. An autopsy revealed severe arteriosclerosis of the brain vessels, hypertrophy of the heart, and sclerotic changes in the kidneys. The plaintiff's medical witness testified that the immediate cause of the death was arteri-

osclerosis and that it was a systemic degenerative disease. After reviewing his testimony, the court said: "It thus appears that arteriosclerosis, or hardening of the arteries, is a degenerative disease, insidious in onset, difficult of detection in earlier stages, and progressive in nature."

A witness for the insurance company called hardening of the arteries "a constitutional change incident to increasing age." It seemed to be agreed that the death of the insured was due to a "severe arteriosclerosis of the brain vessels, a diseased arterial condition." The issue drawn was only whether the accident was the sole cause of that condition. The court held the evidence sufficient to make a jury question. Again the rule of the Shryock Case was stated.

Metropolitan Life Ins. Co. v. Siebert (C. C. A. 8) 72 F. (2d) 6, 7, established in this circuit the rule that, where a disease with which the insured was suffering had no causal connection with his death, the accident is to be considered the sole cause.

While the correctness of the above-quoted rule laid down by Judge Sanborn has not escaped question, see Modern Woodmen Acc. Ass'n v. Shryock, 54 Neb. 250, 74 N. W. 607, 39 L. R. A. 826, it is established as the law of this circuit.

It is to be noted that beyond the rules therein laid down the Shryock Case does not advance. It contains no assertion that the very existence of a disease in the body of the insured is fatal to recovery under the policy. Metropolitan Life Ins. Co. v. Siebert, supra. Still less does it stand for a rule that any sclerotic condition of an insured's arteries makes such recovery impossible. Advanced disease was present in the Shryock Case. See, also, Massachusetts Protective Ass'n v. Lewis (C. C. A. 3) 72 F. (2d) 952, 954. There was no pertinent question there, as here, whether insured's condition was or was not of a nature sufficiently serious to be classed as a disease. And it is to be further observed that, while Judge Sanborn spoke alternatively of disease or bodily infirmity, he clearly meant by the latter only bodily infirmity of the nature of and equivalent to disease. His failure to use the alternative throughout his opinion would appear indicative of this fact.

▐ The Kelley Case does contain language and implications to the effect that arteriosclerosis is a disease and a contributing factor in many deaths. In that case, however, the insured was afflicted with severe arteri-

osclerosis. His arterial degeneration had reached a stage beyond that normally found in persons of his age and had acquired the status of a "disease." The issue was as to the cause of that condition. A disease, recognized, was present. Accordingly, the language and the implications of the case should be received in the light of its facts.

All men do not possess like physical strength, immunity to disease, and resistance to senile degeneration. Some are "inherently" strong, others achieve strength only through a vigorous, patient, and systematically prescribed course of development. Although aware of great discrepancies in physical vigor between individuals, insurance companies issue accident policies to the weak as well as to the strong; to the old as well as to the young. And to these contracts the companies are held. That an insured is frail or is in a generally weakened condition does not relieve the company from its obligations under the policy. Leland v. Order of U. C. T., 233 Mass. 558, 124 N. E. 517, 520; Sullivan v. Metro. Life Ins. Co., 96 Mont. 254, 29 P.(2d) 1046, 1051; Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81, 171 N. E. 914, 915. Indeed, for recovery, the insured's body need not be "perfectly sound." Massachusetts Prot. Ass'n v. Lewis (C. C. A. 3) 72 F.(2d) 952, 955. It may even have been diseased at one time and left weakened by that disease. New Amsterdam Ins. Co. v. Shields (C. C. A. 6) 155 F. 54, 56; Freeman v. Merc. M. A. Ass'n, 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753.

Just as differences between individuals constitute no ground for an insurance company's denying its responsibility under an accident policy, neither do the normal physical changes that inevitably accompany one's own advance in years afford relief to the insurer. Although the "processes of life and of death are still, in their essential nature, unfathomed mysteries," Ætna Life Ins. Co. v. Allen (C. C. A. 1) 32 F.(2d) 490, 493, we do know that because man lives, he must grow old. His hair greys; lines in his face appear; his senses become less acute; his ability to endure and to achieve decreases. But because one cannot participate in sport with the vigor of two decades earlier, because he cannot ascend and descend stairs with the energy of former days, because he is more susceptible to winter ills and less resistant to the ailments of the body, does not mean that one is "diseased" within the meaning of an accident policy. Such policies are issued to people of different ages just as they are to people of different physical abilities. To have them mean anything, therefore, the protection they afford the insured must not be defeated by those expected and normal physical changes that inevitably come to all men.

What has just been said generally with respect to physical degeneration that accompanies advancing age applies specifically to that condition called arteriosclerosis. It is a fact of general knowledge—and there is evidence in the instant case—that, as one grows older, his arteries harden and become brittle, calcium deposits are laid therein, and he is considered "sclerotic." It is a physical characteristic of years and belongs in the category of greying hair, stiffening joints, and wrinkling skin. So long as it is "normal," so long as it advances to no greater degree than is customarily found in persons of the same age, this sclerosis cannot be termed a disease in the sense that defeats recovery. While arteriosclerosis has often been termed a disease and is at times rightly considered such, it must in the specific individual be more than is normal to render it a disease within the meaning of an accident policy. Any other interpretation would largely nullify contracts of the character here involved, for almost every individual out of his forties would then be "diseased" and, in most cases, therefore, unable to be eligible for the enjoyment of the benefits of the policy. The insurance company assumes the risks of normal physical degeneration, as distinguished from "disease." Such clearly was the intention of the parties when the contract was entered into. "A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules," said Mr. Justice Cardozo when he was Chief Judge of the New York Court of Appeals. Silverstein v. Met. Life Ins. Co., 254 N. Y. 81, 171 N. E. 914, 915. Nor is it accepted with the thought that the mere weakenings of age will render its benefits incapable of enjoyment.

This view is not without support in the authorities, although certain of the courts prefer to base their analyses upon principles of proximate cause. While it has been said that the cases are hopelessly in conflict and that any attempted reconciliation would only result in absurd and useless distinctions, Wheeler v. F. & C. Co. of New York, 298 Mo. 619, 251 S. W. 924; Sullivan v. Met. Life Ins. Co., 96 Mont. 254, 29 P.(2d) 1046,

and United States Cas. Co. v. Thrush, 21 Ohio App. 129, 152 N. E. 796, many authorities suggest that the differences are perhaps more fancied than real. Equitable Life Assur. Soc. v. Gratiot, 45 Wyo. 1, 14 P. (2d) 438, 441, 82 A. L. R. 1397. Almost without exception in those cases wherein there appears language seemingly contrary to the above analysis, the physical "degeneration" of the insured had passed far beyond the normal state and had reached unquestionably the degree of disease. Ætna Life Ins. Co. v. Ryan (C. C. A. 2) 255 F. 483; Order of U. C. T. v. Nicholson (C. C. A. 2), 9 F. (2d) 7; Binder v. National Masonic Acc. Ass'n, 127 Iowa 25, 102 N. W. 190; Massachusetts Prot. Ass'n v. Lewis (C. C. A. 3) 72 F.(2d) 952, 954.

"It is common knowledge, of which this court can take judicial notice, that arteriosclerosis is a frequent cause of death, and that one who is in an 'advanced state of arteriosclerosis,' as it was testified Ostrander was, is not only diseased, but very dangerously diseased." Order of U. C. T. v. Nicholson (C. C. A.) 9 F.(2d) 7, 14. See also Commercial T. M. A. A. v. Fulton (C. C. A. 2) 79 F. 423; Ætna Life Ins. Co. v. Ryan (C. C. A. 2) 255 F. 483; Binder v. National M. A. A., 127 Iowa, 25, 102 N. W. 190; and Sullivan v. Metro. Life Ins. Co., 96 Mont. 254, 29 P.(2d) 1046. It would appear, therefore, that such statements must be interpreted in the light of the facts with respect to which they were uttered.

The Nebraska court in Moon v. Order of U. C. T., 96 Neb. 65, 146 N. W. 1037, 1043, 52 L. R. A. (N. S.) 1203, Ann. Cas. 1916B, 222, has given full effect to the distinction between a physical condition that is representative of only the normal degeneration of advancing age and that which is abnormal or diseased. In that case there was evidence that the walls of the decedent's heart were thin; that with age the walls of the heart grow thinner; that the decedent was afflicted with Bright's disease; that his femoral artery and aortic valve were sclerosed and hard; that a sclerosed condition of the human body is a change that comes to everybody with age; that a person fifty years of age has a normal hardening of the arteries. In answering a contention that because of these conditions the defendant was not liable, the court said: "To this it may be said that, if the insurance is to be defeated because of the fact that the walls of the heart grow thinner by advancing years, or the arteries become sclerosed, or the valves of the heart act improperly, and this condition is the result of age, then the collection of the insurance money may nearly always be defeated by the effect of increasing years, which change the condition of the assured. We do not believe this to be the policy of the law. If it was the policy of the law, it would permit the defeat of meritorious cases. * * * It is also contended by the defendant that the death was in consequence of disease, and that it was caused wholly or in part by bodily infirmity, and that the injury received was not the proximate, sole, and only cause of the death. This would seem to bring us to the question whether the beneficiary of an elderly person who dies because of the injury received through an accident can recover anything if the organs of the body are affected by the age of the assured. When the membership is created, it must be known that the member will grow old if he lives, and that the organs of his body, including the heart, lungs, and kidneys, are likely to be affected in time, and that the assured will be unable to resist in his old age the force of an accident which he might have successfully resisted at an earlier period."

A judgment for the plaintiff was affirmed.

In Lickleider v. Iowa St. T. M. A., 184 Iowa 423, 434, 166 N. W. 363, 365, 168 N. W. 884, 3 A. L. R. 1295, two physicians testified that the insured died of arteriosclerosis and obstruction of the coronary artery, and that the coronary arteries were very sclerotic. A third testified that the decedent had no more arteriosclerosis than is usual in a man of his size and age. The court held that the question whether the decedent died of disease was for the jury, saying: "If the arteries of the deceased were sclerotic, but the sclerosis was such only as is the natural or usual accompaniment of increasing years, the fact, if it be a fact, that a bodily injury sustained by him would more likely be fatal than would be the case if such condition did not exist would not prevent a recovery on the policy should it otherwise appear that the injury was of the nature or kind described in the contract."

In United States Casualty Co. v. Thrush, 21 Ohio App. 129, 152 N. E. 796, 797, it was agreed by the medical witnesses that the insured was afflicted with arteriosclerosis. A conflict existed, however, as to the extent of that condition and as to whether the accident caused the death of the insured. The court said:

"While it is agreed by all the medical witnesses that arteriosclerosis existed in Thrush at the time of his death, and at the time of the accident, yet it is not an undisputed fact that sclerosis to an extent unusual in a man of Thrush's age existed at the time of the accident. All the medical witnesses agree that a certain amount of sclerosis is usually found in persons of Thrush's age.
* * *

"The policy in this case was originally issued to Thrush when he was 60 years of age, and continued in force up to the time of the accident, when he was 63 years of age. We think it is fair to assume, from the testimony in the case as well as from judicial knowledge, that a certain amount of sclerosis is usually found in a person of 60 years of age. To hold that the insurance company, by the issue of its policy, intended to adopt the view that the policy would not be valid where natural diseases, especially of old age, make serious results more probable from accidents, would be an unfair and unreasonable construction. We have a right to assume, in fact we do not doubt, that the insurance company acted in good faith in issuing Thrush's policy. The company intended a reasonable scope of insurance, and this can be accomplished by holding the company liable for accidents which, operating upon the physical system according to the natural and usual conditions of age, produce serious illness or death."

It was held that the jury was justified in making the finding it did.

In Equitable Life Assurance Soc. v. Gratiot, 45 Wyo. 1, 14 P.(2d) 438, 445, 82 A. L. R. 1397, the insured died of paralysis caused by a cerebral hemorrhage. Certain medical witnesses testified that there was found in the body of the insured no evidence of arteriosclerosis, that hardening of the arteries was not a disease but was a condition of the tissues developing gradually over a period of years, and that any arteriosclerosis of the deceased had nothing to do with his death. Other witnesses testified that the insured did have arteriosclerosis which explained his mental condition and death. There was also evidence that sclerosis of the arteries was a common condition. The court based its conclusion on the principle of proximate cause, and concluded that it was a matter for the jury to decide upon conflicting testimony. It was said: "A policy of insurance should not, of course, be so strictly construed as to thwart the general object of the insurance.

To do so would, in the long run, subserve the purposes neither of insurers nor insured."

In Clarke v. New Amsterdam Casualty Co., 180 Cal. 76, 179 P. 195, 196, the immediate cause of the insured's death was acute myocarditis. The autopsy revealed that the heart valves were covered with a calcareous deposit. One expert testified that this was due "to arteriosclerosis, which is frequently due to old age." The court observed that there was no showing that the condition of the insured was pathological or even unusual, but went on to say: "Naturally, a man of 60 or more would have less power to resist evil consequences resulting from an accident than a younger person would possess, but an insurer, accepting as premiums the money of a client of advanced years, may not complain of that fact. * * * It may be conceded that morbid conditions induced by bodily injury may be more readily caused and more deadly in result when the victim is an aged person than in the case of a healthy youth, but that concession would not excuse the insurer of the maturer individual."

In Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81, 171 N. E. 914, an ulcer had weakened the wall of the insured's duodenum so that a blow suffered by him resulted in a puncture of the intestine. Said Chief Judge Cardozo:

"In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men. * * *

"A recovery will not be denied to the sufferer from hernia who has had a predisposition to rupture because the inguinal canal was not closed as it ought to have been, * * * or to one whose hip has been fractured because his bones have become brittle with the advent of old age. * * *

"Any different construction would reduce the policy and its coverage to contradiction and absurdity."

These cases were approved generally in McMartin v. F. & C. Co. of New York, 239 App. Div. 296, 267 N. Y. S. 473. On appeal this case was reversed, four judges to two, 264 N. Y. 220, 190 N. E. 414, on the ground the plaintiff had not met the burden of showing that the "idiosyncratic condition" of the

body of the insured was not a disease. It was expressly recognized, however, that this proof was open to the plaintiff. See, also, Freeman v. Mercantile M. A. A., 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753; Driskell v. U. S. Health & A. Ins. Co., 117 Mo. App. 362, 93 S. W. 880, 882; and 3 A. L. R. 1304; Equitable L. Assur. Soc. v. Gratiot, 45 Wyo. 1, 14 P.(2d) 438, 82 A. L. R. 1411.

The evidence before the court calls for a definite application of these rules. As has been noted, Dr. Kirk testified that decedent's high blood pressure before the time of the accident had been brought down to a normal average in the month of August, 1932; that Combs died of a brain hemorrhage produced by external force; that Combs' end was not a common one for persons of his age whose arteries are in a sclerotic condition; that Combs had many arteries that were only in the process of becoming hard; that arteriosclerosis is a common thing in the human family; that it is common among people in middle life; that old age is characterized by the hardening of the blood vessels; that arteriosclerosis is a "disease" of middle or old age; that Combs was 58 years of age; that arteriosclerosis is not a particularly abnormal condition; that it is a normal physiological change that might become a pathological change; that it usually appears with the years, is the natural result of wear and tear, and is a common and natural change. On the other hand, Dr. Russum testified that in Combs' heart and kidneys there were found the usual changes of arteriosclerosis; that there was a general sclerotic condition throughout his vessels; that arteriosclerosis is a pathological condition, a disease; that a hemorrhage of the kind suffered by Combs is common in people with high blood pressure; that Combs died of a brain hemorrhage that came on without any injury; that Combs' arteriosclerosis was moderately advanced; that arteriosclerosis is a common condition; that most people in middle life have it to some degree; that arteriosclerosis can very properly be called a disease and is so regarded by leading medical authorities; that Combs' arteriosclerosis was not of an advanced type such as might be expected in a man of eighty.

While the burden of proof is of course on the plaintiff to bring herself within the provisions of the policy, Travellers' Ins. Co. v. McConkey, 127 U. S. 661, 668, 8 S. Ct. 1360, 32 L. Ed. 308; National Masonic Acc. Ass'n v. Shryock (C. C. A.) 73 F. 774, 775; Lincoln National Life Ins. Co. v. Erickson (C. C. A. 8) 42 F.(2d) 997, 1000; and Brown v. Maryland Casualty Co. (C. C. A. 8) 55 F.(2d) 159, 160, and to show that an accident caused the injury, the question whether plaintiff has sustained that burden and by a preponderance of the evidence has shown that Combs' sclerotic condition was only that normal to persons of his age and not of the state where it constituted a disease, is, under this conflicting medical testimony, a question for the jury.

IV. There is thus left only the question of whether the case was properly submitted to the jury. In his ruling on defendant's motion for a directed verdict the court expressed the view that the policy's exclusion was disease; that whether a sclerotic condition of the arteries is a disease is a question of degree; that "if arteriosclerosis has developed beyond the ordinary degree for a given age, it may become a disease"; that whether it had developed in the insured to such an extent as to be a proximate cause of his death was a matter for the jury. The court instructed the jury in short that to justify a finding for the plaintiff they must find there was an accident; that such accident caused the injury that resulted in the death of the insured; and that no other cause contributed thereto. The defendant contends that prejudicial error was committed by the court when, in dealing with the matter of whether the death was caused directly or indirectly by disease in any form, it was said with respect to the arteriosclerosis of the deceased, "It may or may not have contributed to the death of the deceased," the defendant's theory being that the evidence shows conclusively that the sclerotic condition of the insured did contribute to his death and that there was no evidence in the case to justify a conclusion that the presence of the sclerosis in his arteries was not a contributing factor in Mr. Combs' death.

Under the circumstances and issues of the case, we think this portion of the charge objectionable. That the arteriosclerotic condition contributed to the death was beyond question under the evidence. The question was whether it constituted a disease within the meaning of the policy, and this depended upon the degree the condition had attained. Under the theory of the court as expressed in his ruling on the motion, the only question submissible to the jury was whether the arteriosclerosis was in degree

merely such as would be common to a man the age of the deceased, or whether it was abnormal and beyond that degree. The court quite clearly expressed this view in his ruling on the motion, but we do not think it was submitted with clarity or in fact carried into the charge. The jury was left uninformed as to the vital distinction to be considered.

On the ground solely of the error in this instruction, the case is reversed and remanded for a new trial.